Walter James HOWELL, Plaintiff and Appellee,

v.

Barbara Joyce HOWELL, Defendant and Appellant.

No. 890596–CA.

Court of Appeals of Utah.

Feb. 28, 1991.

Paul H. Liapis, Helen E. Christian (argued), Kim M. Luhn, Gustin, Green, Stegall & Liapis, Salt Lake City, for defendant and appellant.

David S. Dolowitz (argued), Michael S. Evans, M. Joy Douglas, Cohne, Rappaport & Segal, P.C., Salt Lake City, for plaintiff and appellee.

Before BENCH, GARFF and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Defendant, Barbara Joyce Howell, appeals from a divorce decree's award of alimony and division of equity in a California home. We affirm the property division but reverse and remand as to alimony.

## FACTS

Defendant and plaintiff, Walter James Howell, were married on October 14, 1956. Plaintiff began working as a pilot for Western Airlines shortly after the parties married. He continued to be employed as a pilot with Western, later taken over by Delta Airlines, throughout the parties' marriage. The parties had five children, four of whom were emancipated at the time of trial. The parties had marital difficulties on and off for a number of years and separated in November 1986. At that time, plaintiff's gross income was between $5500 and $5600 per month, and had been at that level for the prior five years. Western Airlines experienced financial problems prior to the takeover by Delta Airlines. As a result of negotiations between Western and its pilots, plaintiff received virtually no pay raises between 1981 and 1986, despite increases in the cost of living. Both parties testified that their family finances were strained during that time period.

Plaintiff filed for divorce in November 1987. At the time of trial, December 1988, his gross monthly income had increased to $10,120. Plaintiff's financial declaration indicated monthly expenses of $7960, which included $2400 for alimony and child support, $372 for vacations, and $633 for attorney fees.

During the parties' marriage, defendant was a homemaker and had worked only part time at unskilled labor jobs. At the time of trial defendant earned $649.80 per month, though that job was only temporary and terminated in December 1988. She testified at trial that she had monthly expenses totaling $5021.[1]

The parties owned homes in Utah and California, as well as real property in Texas. Plaintiff testified that the Utah home had little, if any, equity, while the California home would yield substantial equity. Plaintiff wanted to sell all the properties and divide the net proceeds. Defendant testified she would prefer to live in the California home.

After trial, the court entered findings of fact, conclusions of law, and a decree of divorce on May 12, 1989. In its findings, the court states its belief that "the income level of $5500 reflects the income level and living standards of the parties during the

---

1. Defendant filed an earlier declaration of monthly expenses totaling $4464.62, but included no expenses for real property taxes or insurance, indicating that they were then unknown.

last five years of their lives together." The court found that defendant was capable of earning $625 per month, and that plaintiff had income of $10,000 per month. The findings further state that "[t]he court has determined in setting alimony that while $5,500.00 per month represents the living standards of the parties in the last 5 years of the marriage, when the parties resided together, the ability of the plaintiff to pay alimony is based upon his present income of $10,000.00 per month." Defendant was awarded $1800 per month alimony and $1363 per month child support for the parties' then sixteen year-old child, based on the child support guidelines then in effect. The court ordered that all of the real property, including the California home, be sold and the net proceeds divided equally between the parties.

On appeal, defendant asserts (1) the parties' standard of living, for purposes of determining alimony, should be based on that at the time of trial; (2) the alimony awarded is insufficient; and (3) the trial court should have taken into consideration the tax consequences of selling the California home.

## STANDARD OF REVIEW

Trial courts have considerable discretion in determining alimony and property distribution in divorce cases, and will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated. *Rasband v. Rasband*, 752 P.2d 1331, 1333 (Utah Ct.App.1988). Findings of fact in divorce appeals are subject to the clearly erroneous standard of review such that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a); *Jense v. Jense*, 784 P.2d 1249, 1251 (Utah Ct.App.1989). Conclusions of law, however, are reviewed for correctness and given no special deference on appeal. *Bountiful v. Riley*, 784 P.2d 1174, 1175 (Utah 1989); *Smith v. Smith*, 793 P.2d 407, 409 (Utah Ct.App.1990).

## ALIMONY

■ Defendant claims that the alimony award would have been higher if the trial court had considered the parties' standard of living at the time of trial rather than when the parties separated, approximately two years earlier. Additionally, defendant claims alimony should have been higher because of the disparity in the parties' income, length of the marriage, and the parties' respective earning abilities and expenses. We consider first the applicable standard of living question.

■ The value of marital property is determined as of the time of the divorce decree or trial. *Fletcher v. Fletcher*, 615 P.2d 1218, 1222–23 (Utah 1980). *See also Berger v. Berger*, 713 P.2d 695, 697 (Utah 1985). The reason for the rule is that "[b]y the very nature of a property division, the marital estate is evaluated according to what property exists at the time the marriage is terminated." *Jesperson v. Jesperson*, 610 P.2d 326, 328 (Utah 1980). Courts can, however, in the exercise of their equitable powers, use a different date, such as the date of separation, if one party has "acted obstructively, ..." *Peck v. Peck*, 738 P.2d 1050, 1052 (Utah Ct.App.1987).

No cases in Utah or elsewhere, that we or counsel have discovered, have specifically addressed the question of when a couple's "standard of living" should be determined for the purpose of calculating alimony, be it separation or trial or some other time. Most speak only of the standard of living during marriage. *See Savage v. Savage*, 658 P.2d 1201, 1205 (Utah 1983). "Standard of living" is defined as "a minimum of necessities, comforts, or luxuries that is essential to maintaining a person in customary or proper status or circumstances." *Webster's Third New International Dictionary* 2223 (1986). "An alimony award should, to the extent possible, equalize the parties' respective post-divorce living standards...." *Rasband v. Rasband*, 752 P.2d 1331, 1333 (Utah Ct.App. 1980).

In this case, the parties were separated for approximately one year before plaintiff filed for divorce. About one year later, trial was held. We note that a separation

of two years before trial in a divorce action is certainly not unusual. During that two-year period, plaintiff's income doubled because of the successful takeover of Western Airlines by Delta Airlines. Plaintiff's ability to take advantage of that change was at least in part a result of having persevered during the lean times, as did his wife and children. The impact of the salary increase on the parties' standard of living, however, was certainly affected by the fact that it was used to maintain separate living arrangements.

 We believe it is consistent with the goal of equalizing the parties' post divorce status to look to the standard of living existing at or near the time of trial in determining alimony. This is consonant with the treatment of both marital property and child support and is better designed to equip both parties to go forward with their separate lives with relatively equal odds. It is further justified because any future changes in alimony are limited to instances where a material change of circumstances has occurred. *Bridenbaugh v. Bridenbaugh*, 786 P.2d 241, 242 (Utah Ct.App. 1990). In so holding, we agree with the dissenting opinion that determining standard of living is a "fact-sensitive, subjective task." We disagree, however, that standard of living is determined by actual expenses alone. Those expenses may be necessarily lower than needed to maintain an appropriate standard of living for various reasons, including, possibly, lack of income. As Webster says, standard of living includes "customary or proper status" considering the parties' circumstances. Those circumstances should be evaluated at the time of trial and, contrary to the dissent, can properly address what situation would have existed if the parties had not separated earlier. In this case, the post-separation substantial increase in plaintiff's income was akin to deferred income. In light of the facts of this case, we conclude that the trial court erred in looking at the pre-separation standard of living in setting alimony, but should have instead considered the standard of living "during the marriage" up to the time of trial. In so concluding we do not intend to establish a rigid rule which must be followed in all domestic cases, but acknowledge that trial courts have discretion to determine the standard of living which existed during the marriage after consideration of all relevant facts and equitable principles. In this case, it was inequitable and an abuse of discretion to pinpoint standard of living as of the time of the parties' separation.

 We now turn to defendant's argument that the court did not properly consider all relevant factors, resulting in an unjustifiably low alimony award. Trial courts must consider the following factors in setting alimony: (1) the financial condition and needs of the recipient spouse; (2) the recipient's ability to produce income; and (3) the ability of the payor spouse to provide support. *Davis v. Davis*, 749 P.2d 647, 649 (Utah 1988). Utah cases have stated that the purpose of alimony is to prevent the receiving spouse "from becoming a public charge" and to maintain the standard of living enjoyed during the marriage, to the extent possible. *Fletcher*, 615 P.2d at 1223. Therefore, trial courts should first, determine the financial needs and resources for both parties, by examining the three factors enumerated. Second, the court should set alimony as permitted by those parameters, to approximate the parties' standard of living during the marriage as closely as possible. It follows that if the payor spouse's resources are adequate, alimony need not be limited to provide for only basic needs, but should also consider the recipient spouse's "station in life." *Gramme v. Gramme*, 587 P.2d 144, 147 (Utah 1978). In *Gardner v. Gardner*, 748 P.2d 1076 (Utah 1988), the Utah Supreme Court reviewed an alimony award after a long-term marriage. The court found that the alimony award in that situation should, "to the extent possible, equalize the parties' respective standards of living and maintain them at a level as close as possible to that standard of living enjoyed during the marriage." *Id.* at 1081. *See also Paffel v. Paffel*, 732 P.2d 96, 103 (Utah 1986); *Olson v. Olson*, 704 P.2d 564, 566 (Utah 1985).

The trial court must make findings on all material issues. Failure to do so constitutes reversible error, unless pertinent facts in the record are "clear, uncontroverted, and capable of supporting only a finding in favor of the judgment." *Andersen v. Andersen*, 757 P.2d 476, 478 (Utah Ct.App.1988).

Utah's appellate courts have considered the appropriateness of alimony after a long term marriage, where the wife (usually) has worked primarily in the home, has limited job skills, and is in her late forties or fifties. *Gardner*, 748 P.2d 1076; *Rasband*, 752 P.2d 1331, 1333. In *Jones v. Jones*, 700 P.2d 1072 (Utah 1985), the supreme court found alimony awarded inadequate to allow the wife a standard of living even approaching that experienced during the marriage, and described the marriage as follows:

> During most of the marriage, with the full consent and support of her husband, [the wife] devoted her time to raising their four children and donating her services to various social service organizations.... It is entirely unrealistic to assume that a woman in her mid–50's with no substantial work experience or training will be able to enter the job market and support herself in anything even resembling the style in which the couple had been living.

*Id.* at 1075.

In this case the court made findings as to both plaintiff's and defendant's gross incomes. It did not, however, make the required finding as to defendant's financial needs, although defendant testified to monthly expenses of approximately $5,000. Child support set pursuant to child support guidelines at $1363, plus alimony of $1800, plus defendant's potential salary as determined by the court of $645, yields total gross monthly income of $3808 for defendant and her son. Plaintiff,

after deducting child support and alimony, has gross monthly income of $6837. When his child support obligation ceases, approximately fifteen months after the decree, he will have gross monthly income of $8200 in comparison to defendant's $2445.[2] Defendant fits the profile described in *Jones* and other cases: she is approximately fifty years old, has minimal marketable job skills, and has spent most of the thirty plus years of the parties' marriage raising and caring for their five children and their home, presumably with the concurrence of plaintiff. Her likelihood of achieving significant salary levels in the future is slim. The alimony set by the court does not come close to equalizing the parties' standard of living as of the time of the divorce, but allows plaintiff a two to four times advantage.[3] We, therefore, hold that the alimony amount set by the court was clearly erroneous.

We reverse and remand to the trial court on the issue of alimony, for findings as to defendant's financial needs, the parties' standard of living at the time of the trial, and for adjustment of the amount of alimony to better equalize the parties' abilities to go forward with their respective lives.

## TAX CONSIDERATIONS

Defendant also urges that the court erred by failing to consider the tax consequences of selling the California home. Defendant produced an expert witness at trial who testified as to the possible tax ramifications of the sale. He discussed capital gains tax, but said the amount would depend on the sales price, and that it might be avoided pursuant to tax regulations. He testified that taxes might be deferred, or "rolled over," but could not say with any certainty how the IRS would rule. There is no abuse of discretion if a court refuses to speculate about hypothetical future tax consequences of a property

---

**2.** "If courts award child support in lieu of permanent alimony, they may fail to anticipate the financial impact on the remaining family as each child reaches age 18 and his or her award terminates." March 1990 *Utah Task Force on Gender and Justice Report to the Utah Judicial Council* 38.

**3.** Exact mathematical equality of income is not required, but sufficient parity to allow both parties to be on equal footing financially as of the time of the divorce is required.

division made pursuant to a divorce. *Alexander v. Alexander*, 737 P.2d 221, 224 (Utah 1987). Tax consequences in this case were speculative as to whether they could be avoided or delayed, and as to amount. The court heard testimony and evidence regarding possible tax implications, but did not err in refusing to adjust property distribution because of those theoretical consequences.

## CONCLUSION

We affirm the trial court's property distribution order but reverse as to the alimony award and remand for further proceedings consistent with this opinion.

GARFF, J., concurs.

BENCH, Judge (concurring in part, dissenting in part):

I agree with the majority opinion's treatment of the "tax considerations." I also agree that this case must be remanded for entry of appropriate findings as to the needs of defendant for alimony and the ability of plaintiff to pay alimony. I respectfully disagree with the majority, however, as to how the parties' standard of living during the marriage impacts the alimony computations. The majority rules, as a matter of law, that in computing the alimony award, the trial court should have considered a hypothetical standard of living as if the parties were living together at the time of trial rather than their actual standard of living enjoyed prior to separation.[1]

There are no cases addressing when the parties' standard or living is determined because a "standard of living" cannot, as the majority implies, be quantified by the trial court. It is not like marital property which is capable of objective valuation at a given time. Nor is it capable of being calculated based on set figures of income

as are child support payments. Determining the parties' standard of living during marriage is a fact-sensitive, subjective task that requires a trial court to look at the totality of the parties' financial circumstances during the marriage. The Utah Supreme Court has therefore established objective factors that must be considered by the trial court when it determines an award of alimony.

> "The most important function of alimony is to provide support for the wife as nearly as possible at the standard of living she enjoyed during marriage, and to prevent the wife from becoming a public charge." *English v. English*, 565 P.2d [409] at 411. [(Utah 1977)] With this purpose in mind, the Court in *English* articulated three factors that must be considered in fixing a reasonable alimony award:
>
> [1] the financial condition and needs of the wife;
>
> [2] the ability of the wife to produce a sufficient income for herself; and
>
> [3] the ability of the husband to provide support.

*Jones v. Jones*, 700 P.2d 1072, 1075 (Utah 1985). *Accord Paffel v. Paffel*, 732 P.2d 96, 100–01 (Utah 1986) (failure to consider these factors is an abuse of discretion); *Olson v. Olson*, 704 P.2d 564, 566–67 (Utah 1985) (an appellate court will not disturb a trial court's ruling if these factors are adequately addressed).

As is apparent from the foregoing quotation, the receiving spouse's previous standard of living is not an independent factor to be quantified and incorporated into a formula for calculating alimony. Rather, it is a frame of reference for determining the reasonableness of the alimony award. *See generally*, 2 H. Clark, Jr., The Law Of Domestic Relations In The United States § 17.5(8) (2d ed. 1987). In the present case,

---

1. Contrary to the majority's assertion, the trial court did not "pinpoint" the parties' standard of living as of the time of separation. The trial court took the parties' average income over a five-year period prior to separation and assumed that their average income was their "standard of living." While it is clear that the trial court erred in assuming that income alone

establishes a standard of living, it may not be said that it made the mistake of pinpointing that standard of living. The majority therefore errs in finding that the trial court abused its discretion when the trial court did not even make the mistake that the majority is accusing it of making.

we are not concerned with the risk of defendant becoming a public charge given the apparent ability of plaintiff to cover defendant's basic needs. The question is how much additional support above defendant's basic needs should be granted. The parties' standard of living prior to separation helps to establish what would be reasonable by showing the lifestyle to which the parties have grown accustomed.

Defendant seeks to benefit from plaintiff's raise by mistakenly, and unnecessarily, claiming that the raise entitled her to alimony based upon a hypothetical standard of living to be calculated from plaintiff's new annual salary of $120,000, an income to which she has never grown accustomed.[2] In other words, defendant claims that her relevant standard of living is the unknown standard of living that she might have enjoyed were the parties not terminating their marriage. Since any attempt to determine a standard of living for two separated parties as if they were not separated would be purely speculative, the majority's ruling is judicially unworkable. There is no rational way of knowing how the parties might have utilized the increased income had they remained together. Would they have bought a new car, a new house, or maybe a vacation timeshare? Or would they have simply saved the money for retirement? Since a couple's standard of living is determined in large part by how they spend their resources, a trial court could do nothing but speculate about the possible standard of living if the marital relationship had continued beyond separation.

Not only is such an approach unworkable, it is not needed if the traditional approach outlined in *English* is followed. In the present case, the trial court clearly failed to determine defendant's financial condition and needs based on the expenses she claimed to be necessary to maintain the standard of living she enjoyed during the marriage. *See, e.g., Olson,* 704 P.2d at 567 ("to maintain the standard of living enjoyed during the marriage, the living expenses of the wife and minor children would be $4,200 per month").

Defendant presented to the trial court evidence of the expenses which she claimed would be necessary to maintain her standard of living, but the trial court made no findings thereon.[3] The trial court should have reviewed the expenses claimed and determined which expenses could be deemed reasonable *in light of the standard of living she had enjoyed prior to the separation. See, e.g., Jones,* 700 P.2d at 1075 (the couple had enjoyed a "very comfortable lifestyle," alimony award of $1,000 per month was insufficient for wife to "maintain anything even approaching the standard of living she enjoyed during the marriage"). Her reasonable expenses should have then been offset by her own resources, i.e., any investment income and her own wage-earning capacity. Only then could the trial court have made a finding as to defendant's needs.

The trial court should have then gone through the same analysis as to the plaintiff's needs and resources in order to determine his ability to pay. Again, the reasonableness of his claimed expenses should be reviewed with the parties' prior standard of living in mind. The trial court should have then determined whether plaintiff's resources exceeded his reasonable needs. At this point the trial court should have, and in fact did, consider the impact of the dramatic increase in plaintiff's income. If

---

**2.** Defendant claims, and the majority seems to agree, that defendant is entitled to a larger amount of alimony because she "persevered during the lean times." Such an argument does not, however, justify an amount in excess of the needs substantiated by the receiving spouse. *English,* 565 P.2d at 412. The majority's summary conclusion that the income was "akin to deferred income," is totally unsupported. While the parties may have perservered at Western Airlines during the lean times, there is no evidence that there was any commitment from Western that plaintiff's income would increase if and because he stayed with the airline.

**3.** Defendant's actual expenses at the time of trial were likely greatly diminished due to her limited income at the time. She therefore correctly sought to present not only her actual expenses during the separation, but also the expenses she claimed would be necessary to maintain or, in many cases return to, the standard of living she enjoyed prior to separation.

plaintiff had not received the raise, then his ability to pay would be approximately $4,500 less per month, in which case neither party would likely be able to enjoy a standard of living anywhere near their previous standard. Inasmuch as plaintiff's raise has increased his ability to pay, defendant will be directly benefitted without resort to a hypothetical standard of living to which she had not grown accustomed.

After determining what resources were available to the parties to meet their own reasonable expenses, the trial court should have considered any imbalance in the prospective standards of living if the parties were left to support themselves with their own resources. If it were apparent that defendant could not maintain her previous standard of living with her own resources, and that the plaintiff with his dramatically increased income could maintain a higher standard of living, then the trial court could have awarded alimony to raise the standard of living of the defendant. *Davis v. Davis,* 749 P.2d 647, 649 (Utah 1988) ("the ultimate test of the propriety of an alimony award is whether, given all of these factors, the party receiving alimony will be unable to support him- or herself 'as nearly as possible at the standard of living ... enjoyed during the marriage,' " quoting *English,* 565 P.2d at 411).[4]

Inasmuch as the trial court failed to follow the foregoing approach, the court abused its discretion in making the alimony award. I therefore concur with the majority that this case must be remanded to allow the trial court to properly consider the established factors and make appropriate findings. However, since plaintiff's raise will be fully considered when his ability to pay alimony is determined, I believe there is no need to depart from the established criteria for determining alimony. The parties' standard of living need not, and should not, be extrapolated so as to

include speculations about what their standard of living might have been at the time of trial if they had not separated. I therefore respectfully dissent from the majority opinion's legal ruling on that point.

receiving spouse until it is roughly equal to that of the paying spouse. It is in this sense that alimony should seek "to the extent possible, [to] equalize the parties' respective post-divorce living standards." *Rasband v. Rasband,* 752 P.2d 1331, 1333 (Utah Ct.App.1988).

---

4. The alimony award, however, need not be large enough to maintain the receiving spouse at the standard of living enjoyed during the marriage if that amount of alimony would lower the standard of living of the paying spouse below that of the receiving spouse. Alimony may only raise the standard of living of the