Joy A. **HOAGLAND,** Plaintiff
and Appellant,

v.

Colin G. **HOAGLAND,** Defendant
and Appellee.

No. 920340–CA.

Court of Appeals of Utah.

May 7, 1993.

---

David Bert Havas and Thomas A. Blakely, Ogden, for plaintiff and appellant.

Donn E. Cassity, Sylvia O. Kralik, and Loris D. Williams, Salt Lake City, for defendant and appellee.

Before BENCH, GARFF and JACKSON, JJ.

GARFF, Judge:

Appellant Joy A. Hoagland (Wife) appeals from a decree of divorce awarded to her against appellee Colin G. Hoagland (Husband). We affirm in part, reverse in part, and remand.

## FACTS

We draw the facts from the court's findings of facts. Husband and Wife married September 5, 1973. At the time of the marriage, the couple lived in a house that had been awarded to Wife from a prior marriage. After three years of marriage, Wife sold the house, using the proceeds to purchase, with Husband, another house in the area, where they lived for approximately ten years. Both Husband and Wife held title to the house.

At the time of the marriage, Husband worked for Smiths. Both Husband and Wife quit their jobs to form a partnership with other family members to operate a grocery store. They ran the business until August 1986, when the partnership closed

the business and filed for bankruptcy. Prior to closing the business, Husband executed a quitclaim deed in favor of Wife to protect it from creditors.

During 1986, the parties developed serious problems in their marriage. In January 1987, Husband found employment in Las Vegas, Nevada, once again working for Smiths. He then purchased a house and invited Wife to move to Las Vegas. She refused, stating that her home was in Ogden.

At the time Husband moved to Nevada, he took with him approximately $300.00, a pickup truck that was encumbered, and a motorcycle. Wife had approximately $8,000.00 to $10,000.00 in cash and a motor home, which she later sold for $9,000.00. She also had all of the furniture, the house, the lot, the swimming pool, a 1980 Lincoln Town Car, and a 1976 Chevrolet. None of the vehicles was encumbered.

Wife filed for divorce August 28, 1989. The court ordered Husband to pay Wife temporary alimony in the amount of $1500.00 per month. At the time of trial, Husband owed $27,507.00 arrearages in temporary alimony. Of this amount, $21,935.00 had been reduced to judgment in a hearing held five months prior to trial.

After trial, the court issued its decision. In determining the amount of alimony to award Wife, the court found as follows:

That [Wife] has not become accustomed to a high standard of living during the marriage, it appearing from the evidence that prior to [Husband's] business failing in 1986 he was grossing approximately $500.00 per week which was used for family needs. The parties income tax returns for years prior thereto indicate actual income considerably less.

The court held that the standard of living the parties enjoyed during the marriage would be determined as of the time of separation instead of the time of trial; that the house was a marital asset; that each party was to pay his or her own attorney fees; and that Husband did not owe interest on the temporary alimony arrearages.

The court found that Wife, as a seasonal employee, had a part time gross pay of $8,280.00, plus unemployment for ten weeks, giving her a gross income of $9,780.00 per year.

The court concluded that the Ogden house was a marital asset, and that it should be sold. The court awarded Wife $19,672.00 as reimbursement, without interest, of the equity from the home she owned prior to her marriage. It then divided equally the proceeds of the sale of the marital residence. The court concluded that Husband should not have to pay any interest on the temporary alimony arrearages of $27,507.00, and that he could pay the amount over 45.845 months. Wife appeals.

## STANDARD OF LIVING

Wife claims the court abused its discretion in basing alimony upon the parties' standard of living prior to separation, rather than on the standard of living at the time of trial.

The issue of the time for determining standard of living in alimony cases was thoroughly discussed in *Howell v. Howell*, 806 P.2d 1209 (Utah App.), *cert. denied*, 817 P.2d 327 (Utah 1991). We set forth the rule that, in general, a court should look "to the standard of living existing at or near the time of trial in determining alimony." *Id.* 806 P.2d at 1212. However, because the issue is "fact-sensitive" and because the court must consider "all relevant facts and equitable principles," we defer to the court's sound discretion in determining the parties' standard of living. *Id.*

■ Here the court found that Wife has not become accustomed to a high standard of living during the marriage, it appearing from the evidence that prior to [Husband's] business failing in 1986 he was grossing approximately $500.00 per week which was used for family needs. The parties income tax returns for years prior thereto indicate actual income considerably less.

Here, Wife did not want to move from her home in Utah to continue the marriage, yet she wanted to benefit from the higher

standard of living obtained, in part, as a result of Husband's relocation. Moreover, the court found that the marriage essentially ended when Husband moved out of Utah. Because the court made relevant findings, supported by relevant evidence and equitable principles, we hold that it did not abuse its discretion in this case in departing from the general rule and in basing alimony on the standard of living enjoyed at the time of separation. We therefore affirm the court's alimony award.

## MARITAL PROPERTY

■ Wife claims the court abused its discretion in disregarding the quit claim deed to find the house to be marital property.

Both this court and the Utah Supreme Court have long held that once a court has determined that something is marital property, the court may distribute it equitably, notwithstanding which party's name appears on the title. *Jackson v. Jackson*, 617 P.2d 338, 340–41 (Utah 1980); *Naranjo v. Naranjo*, 751 P.2d 1144, 1148–49 (Utah App.1988). "The trial court is empowered to make such distributions as are just and equitable, and may compel such conveyances as are necessary to that end." *Jackson*, 617 P.2d at 340–41.

This court addressed a similar situation in *Hogue v. Hogue*, 831 P.2d 120, 121 (Utah App.1992), where the husband had, prior to his marriage, conveyed to the wife a ranch as a means of protecting the property from husband's creditors. The couple then married and divorced. The trial court awarded husband an undivided one-half interest in the property. On appeal, we held that the court had not abused its discretion in awarding husband a one-half interest in the ranch, in part because the trial court had found that Husband conveyed the property to protect it from creditors. *Id.* at 122.

Likewise, the court in this instance found that Husband conveyed the Ogden house to protect it from creditors of the failing business. The court also reimbursed Wife for the amount she contributed to the house that represented the equity from her premarital property. Given those findings,

the court acted within its discretion in concluding that the house was marital property, notwithstanding the Husband's quit claim deed.

## ATTORNEY FEES

Wife claims the court abused its discretion in denying her an award of attorney fees.

■ A trial court may use its sound discretion to award attorney fees in divorce proceedings pursuant to Utah Code Ann. § 30–3–3 (1989). *Peterson v. Peterson*, 818 P.2d 1305, 1309 (Utah App.1991); *Bell v. Bell*, 810 P.2d 489, 493 (Utah App.1991). In using its sound discretion, the trial court must take into account three factors: (1) the financial need of the receiving spouse; (2) the ability of the other spouse to pay; and (3) the reasonableness of the requested fees. *Bell*, 810 P.2d at 493; *Rasband v. Rasband*, 752 P.2d 1331, 1337 (Utah App. 1988).

■ This court and the Utah Supreme Court have reversed attorney fee awards where a party has failed to·show one of the factors. *See e.g., Newmeyer v. Newmeyer*, 745 P.2d 1276, 1280 (Utah 1987); *Haumont v. Haumont*, 793 P.2d 421, 426 (Utah App. 1990); *Munns v. Munns*, 790 P.2d 116, 123 (Utah App.1990); *Asper v. Asper*, 753 P.2d 978, 982 (Utah App.1988). Also, this court has affirmed a nonaward of attorney fees where the district court found that the parties' financial circumstances were essentially equal. *Whitehead v. Whitehead*, 836 P.2d 814, 817–18 (Utah App.1992).

Here, the court made the following finding ·regarding the parties' financial status:

That [Wife] in receiving $12,000.00 a year for 3.8 years from [Husband], plus her current earnings on a part time basis of $9,780.00, or more, will provide [Wife] with a gross income of almost $22,000.00 per year, which is almost equal to the income which the parties were living on when [Husband] was drawing $500.00 per week from his business prior to the separation of the parties, and represents a monthly amount greater than the amounts set out in the Affidavit of

monthly expenses as filed by [Wife]. Therefore, [Wife] and [Husband] should each pay their own attorneys fees and costs.

The court also found that Wife had received funds through the sale of the motor home, cash left to her when Husband left the state, money received from the sale of the house, and the other assets.

Because the court made adequate findings based on substantial evidence that the financial circumstances of Husband and Wife were essentially equal, the court acted within its discretion in refusing to award Wife attorney fees.

## INTEREST ON ALIMONY ARREARAGES

■ Finally, Wife claims the trial court erred in denying her statutory interest on temporary alimony arrearages.

*Whitehead v. Whitehead*, 836 P.2d 814 (Utah App.1992) is dispositive: "Child and spousal support payments become unalterable debts as they accrue, and courts may not retroactively reduce or excuse past-due support obligations." *Id.* at 816. This court in *Whitehead* held that this rule applies to temporary support obligations, whether such orders have been issued by a court or administrative body. *Id.* at 817. "Utah statutes indicate that once temporary support obligations become due, they are no more retroactively modifiable than final decrees." *Id.*

Further, this court in *Whitehead* concluded that, unless otherwise provided for, temporary alimony arrearages bear interest at the statutory rate. *Id.* (relying on *Stroud v. Stroud*, 738 P.2d 649, 651 (Utah App.1987), *aff'd*, 758 P.2d 905 (Utah 1988)). The statutory rate is twelve percent per annum. Utah Code Ann. § 15–1–4 (1992).

Here, Husband owed Wife $27,507.00 in temporary alimony arrearages. Of this amount, $21,935.00 had been reduced to a formal judgment in a hearing held May 1991.

■ Husband argues that the commissioner's recommended order on an order to show cause does not constitute a judgment from which interest can accrue. He also argues that the judge's signed order was defective because the judge signed it within the ten-day objection period and not after the ten days had elapsed.

The Utah Code of Judicial Administration is dispositive of both arguments. A party has ten days after the issuance of a commissioner's recommendation to file an objection. Utah Code Jud.Admin. R6–401(4). However, with the exception of pretrial orders, "the commissioner's recommendation is the order of the court until modified by the court." *Id.* Thus, the fact that the judge may have signed the recommendation within the ten-day objection period does not nullify the order, nor does it close off the objection period. In other words, the court's order on the order to show cause constituted a judgment from which statutory interest accrues. Thus, the court erred in not awarding Wife interest on the temporary alimony arrearages of $27,-507.00.

We therefore affirm in part, reverse in part, and remand for the court to determine the amount of statutory interest due Wife on the entire amount of temporary alimony arrearages.

BENCH, Judge (concurring specially):

The main opinion erroneously asserts that *Howell v. Howell*, 806 P.2d 1209 (Utah App.1991), established a general rule that a divorcing couple's standard of living is to be determined as of the time of trial as if the parties had not separated. This court's opinion in *Howell* was based upon the unique facts of that case. *Id.* at 1212. The substantial intervening increase in the husband's income was treated as "deferred income" earned during the years prior to separation. *Id.* Given the unique "deferred income" analysis used in *Howell*, it clearly does not stand for the proposition that the standard of living should generally be determined as of the time of trial. *Howell* is the exception, not the general rule.

This case validates the concerns I expressed in my supplemental opinion in *Howell*. *Id.* at 1214 (Bench, J., concurring in part, dissenting in part). How can a

trial judge possibly evaluate a divorcing couple's joint standard of living at the time of trial when the couple has not lived together for many years? An increase in income during separation should be considered in determining a party's ability to pay alimony, but it has absolutely no impact on the couple's actual standard of living.

The joint standard of living enjoyed by the Hoaglands "during" their marriage necessarily terminated upon their separation. The trial court expressly found: "Defendant's position in the business world was arrived at after his separation from the plaintiff." His increase in income cannot logically be said to have affected the standard of living they actually enjoyed during their marriage—the standard of living to which the trial court correctly found she had become accustomed.

The trial court's ruling in this case should be affirmed, not because the trial court has discretion to depart from the rule provided in *Howell,* but because the trial court correctly followed the general rule, which is to look at the standard of living actually enjoyed.

I therefore concur specially.

JACKSON, Judge (concurring specially):

By its own language, the court's opinion in *Howell v. Howell,* 806 P.2d 1209, 1212 (Utah App.1991), limits its determination that the standard of living should be determined as of the time of trial to the specific facts of that case. Accordingly, I do not agree that *Howell* establishes a general rule that the standard of living must be determined as of the time of trial. Rather, the trial court has discretion to determine whether the standard of living should be determined as of separation or as of the time of trial.