Jo Ann BROOKS (Nunley), Plaintiff, Appellee, and Cross–Appellant,

v.

Thomas M. BROOKS, Defendant, Appellant, and Cross–Appellee.

No. 920733–CA.

Court of Appeals of Utah.

Sept. 12, 1994.

Paul H. Liapis and Kim M. Luhn, Salt Lake City, for appellant.

Randall J. Holmgren, Salt Lake City, for appellee.

Before BILLINGS, JACKSON and ORME, JJ.

BILLINGS, Presiding Judge:

Thomas Brooks appeals from an order (1) requiring him to pay one-half of prospective private school costs for his daughter, one-half of past private school expenses, and one-half of past medical and dental expenses and (2) refusing to allow him a credit for Social Security benefits his daughter receives due to his disability. His ex-wife, Jo Ann Nunley, cross-appeals, seeking an upward adjustment of child support and an order requiring Brooks to pay the entire cost of visitation. We affirm in part and reverse and remand in part.

## FACTS

Brooks and Nunley were divorced in Los Angeles, California in 1985. Pursuant to the decree of divorce, Brooks was ordered to pay $300 per month in child support for their daughter Michelle. Nunley was ordered to pay for Michelle's transportation to and from Los Angeles for visitation with Brooks. This order was based in large part upon Nunley's employment with TWA Airlines, which afforded her free or discounted air travel. Just after the divorce, Nunley moved to Salt Lake City, and Brooks subsequently relocated to Montana.

In June 1988, Nunley filed a "Petition for Modification of Foreign Divorce Decree." She alleged a substantial change in circumstances necessitating a change in her obligation to pay the transportation costs of Brooks's visitation with Michelle. Nunley later filed an amended petition seeking an order requiring Brooks to pay one-half of Michelle's medical and dental expenses, one-half of her private school tuition, and increased child support.

The case was tried in April 1991. Brooks testified that at the time of the divorce he had retired for medical reasons from the Los Angeles Police Department where he was earning a net monthly income of $1600. In addition, he testified that he now suffers from numerous physical ailments, including thyroid disease, an ulcer, and heart disease and that as a result of his disability, he presently receives a pension of $2332.26 per month plus $697 per month in Social Security disability benefits. Nunley attempted to demonstrate that Brooks's income exceeded the $3029.26 per month he claimed. She presented evidence that Brooks purchased a $53,000 Ferrari in 1986 and that he deposited $173,650.68 in a checking account between May 1988 and July 1990.

Nunley testified that her employment with TWA ceased in June 1989. At the time of trial, Nunley was self-employed in a costume business. She testified that she took no salary from 1989 through 1991, except for $2000 in 1989 used to pay for Michelle's private school tuition. Despite receiving no salary, Nunley stipulated to an income of $833 per month for the purposes of calculating child support. Brooks claimed Nunley had access to corporate income from her costume business.

At trial, the parties disagreed about Michelle's private school education. During the marriage, Michelle attended private school in California. However, Brooks claimed that after the divorce, Nunley decided unilaterally to send Michelle to private school in Utah, never asking him to share the tuition costs before filing her petition.[1] Nunley claimed she had understood that Brooks desired to continue Michelle's private school education. In fact, in an Order to Show Cause proceeding initiated by Brooks in California, he threatened to seek custody of Michelle in part because Nunley had withdrawn her from the private school she was then attending.

On April 26, 1991, the trial court signed a minute entry. Although stating that neither party had accurately revealed his or her income, the court concluded that Nunley's monthly income was "around $900," and that Brooks's was $3029.26. The court denied Nunley's request for increased child support, finding there had been no substantial change in circumstances under Utah's child support guidelines.

With respect to travel expenses, the court found there had been a substantial change in circumstances warranting a modification of the decree. The court ruled that because Nunley was no longer employed by TWA and therefore no longer entitled to discounted air travel, and because Brooks moved from Los Angeles to Montana, Nunley's obligation to pay the entire cost of transportation should terminate. The court therefore ordered the parties to share equally the visitation costs.

Further, the court found that both parties wished Michelle to remain in private school. Therefore, the court ordered the parties to share equally the costs of tuition, books, supplies, school activities, and uniforms, but not extracurricular activities. Brooks was also ordered to pay one-half of Michelle's past private school expenses.

Initially, the court credited Brooks with the amounts of Social Security benefits paid to Nunley on behalf of Michelle by reason of his disability and directed him to pay any deficiency on a monthly basis. However, Nunley subsequently filed a "Motion for Clarification of Ruling and for In-Camera Interview," and after numerous motions, the court vacated its April 26, 1991 ruling granting Brooks the credit. The court ruled instead that, pursuant to an accounting by the parties, Brooks owed $8312.75 for one-half the private school tuition and costs, $578.62 for one-half the medical and dental expenses, and $2900.69 for uniforms, activities, and supplies. On October 22, 1992, over the objection of Brooks, the court entered findings of fact, conclusions of law, and an order modifying the decree of divorce. The court awarded judgment to Nunley in the amount of $11,792.06 and denied Brooks credit for the Social Security benefits Michelle re-

1. Michelle attended a private pre-school in California. The California decree did not impose any obligation on Brooks, in addition to his guideline child support, for this private school education. However, we know nothing about the cost of this private pre-school education.

ceives. Brooks appeals from this order, and Nunley cross-appeals.

## I. CHILD SUPPORT

### A. Private School Fees and Increased Child Support

On appeal, Brooks asserts that the trial court abused its discretion in modifying the divorce decree by requiring him to pay one-half of Michelle's private school costs and in entering judgment for one-half of previously incurred private school costs. Nunley cross-appeals, contending that the trial court abused its discretion in failing to increase Brooks's basic child support contributions.

Under Utah's statutory child support scheme, the trial court is to apply the child support guidelines as a rebuttable presumption in establishing or modifying the amount of temporary or permanent child support. Utah Code Ann. § 78–45–7.2(2)(a) (Supp.1994). "In order to rebut this statutory presumption, the trial court must make a finding that use of the guidelines would be unjust, inappropriate or not in the best interest of the child." *Hill v. Hill*, 841 P.2d 722, 724 (Utah App.1992) (citing Utah Code Ann. § 78–45–7.2(3) (1992)). Furthermore, child support modifications are proper only when the party seeking modification demonstrates a material change in circumstances. Utah Code Ann. § 78–45–7(1)(a), (2) (Supp.1994); *Christensen v. Christensen*, 628 P.2d 1297, 1299 (Utah 1981). Moreover, section 78–45–7.2 of the Utah Code defines material change of circumstances with mathematical precision, and contemplates a modification or adjustment when "there is a difference of at least 25% between the existing [child support] order and the guidelines." Utah Code Ann. § 78–45–7.2(6) (Supp.1994).

In the instant case, the trial court concluded that no substantial and material change in circumstances had occurred with respect to the child support calculation. To support that determination, the court made the following findings:

5. The Court finds that the Defendant, THOMAS M. BROOKS, has a current gross income of $3,029.26 per month. The Court bases this finding on all of the evidence submitted at trial, including the evidence that his disability and social security income is tax-free, and including his income producing capabilities, and the Court believes that the finding is based on due consideration of all of the evidence.

6. The Court finds that the income of the Plaintiff is approximately $10,000.00 per year (or about $833.00 per month), based upon the stipulated testimony of the Plaintiff at trial, and the Court finds that her imputed income should be approximately $833.00 per month. The Court did not find evidence to support a finding that Plaintiff was earning more than her stipulated income of $10,000 per year.

7. The Court finds that there has not been a substantial and material change of circumstances based upon its finding that Plaintiff has a minimum of $833.00 gross per month from her costume business, and further that she earned a profit of approximately $4,493.00 for the tax year 1990 from her costume business, that she had incorporated into her tax return a rental write-off of $5,400.00 while operating this business out of her home, and that the Plaintiff had the ability to write-off substantial amounts of expenses through her business, without being required to take money from the business in a taxable form. The Court finds that the Defendant claims a $400.00 per month expenditure to maintain his Ferrari automobile and that the total of Defendant's checking account deposits for the period May 16, 1988 through July 17, 1990, shows approximately $173,-000.00 of deposits and $171,000.00 of withdrawals. While there are certain explanations made which could explain some of the discrepancy, it certainly did not describe or explain away all of the discrepancy as to the Defendant's expenditures.

. . . .

9. The Court is of the opinion that the exhibits and testimony produced by both parties at the time of the trial do not fully reveal the nature and extent of their respective incomes and, therefore, the Court cannot draw any more specific findings from the evidence presented at the time of the trial as to either party's income.

10. The Court finds from the evidence presented and its additional findings set forth above, that Plaintiff and Defendant clearly have additional income which the Court has not been able to compute and arrive at a figure for each party. The Court's best judgment is that it is at a level which does not justify a finding of a substantial change of material circumstances and, therefore, the child support sum of $300.00 per month should be left in place, particularly in view of the Defendant's willingness to keep the child support at its current level of $300.00 per month.

. . . .

18. The Court finds that the Plaintiff has enrolled the minor child in a private school, Rowland–Hall St. Mark's, and that she has expended substantial sums of money to keep said child in a private school. The Court further finds that both Plaintiff and Defendant are desirous for their child to be enrolled in private school. The Court finds that the Defendant noted that he did not believe that he had the ability to maintain the costs to maintain the minor child in private school.

19. The Court finds that Plaintiff and Defendant should pay one-half of the private school tuition, books, supplies, school activities, and school uniforms from the date of Plaintiff's Amended Petition, November 21, 1988, when this issue was first raised by Plaintiff, until the child ceases to attend private school or until further order of this Court.

■ With respect to income figures, the court found that at the time of the divorce, Brooks had a net income of $1600 per month, and Nunley had a net monthly income of $2390.60. These figures compare with $3029.26 and $833, respectively, at the time of the modification trial. When viewed in the abstract, these figures suggest a substantial change in circumstances in that Nunley's income has dramatically decreased, while Brooks's income has almost doubled. However, the relevant inquiry focuses on whether there has been material change *in relation to* the child support guidelines, such that the original award is no longer consistent with these guidelines.

Under the Utah guidelines applicable at the time of trial, Brooks's child support obligation was by our calculations near $300.00 per month.[2] Thus, the trial court properly found there had been no material change warranting an increase in support occasioned by the change in the parties' relative incomes.

However, the determination that Brooks should pay one-half of the private school costs, totalling approximately $300 per month, represents a 100% increase in his obligation,[3] notwithstanding the court's finding that a change in child support was not warranted under the guidelines as a result in income change.[4]

2. This is one of the incongruities that occurs when child support is set under different guidelines in different states. What appears to be a change in circumstances does not qualify as such because Utah's guidelines are comparatively low, causing a different result than would occur under the California system. Comparing the child support levels for the relevant combined parental income figure, Utah's guidelines produce a child support amount in the bottom 20% of all states, while California's guidelines yield a figure in the top 60% nationwide. *See* Maureen A. Pirog-Good, *Child Support Guidelines and the Economic Well–Being of Children in the United States,* 42 Family Relations 453, 459–60 (1993).

3. The trial court did not characterize the award of private school costs, but treated it as an award separate from child support. However, we believe the private school costs are part and parcel of the child support award and have found no authority to the contrary.

4. Nunley suggests that this award is warranted by the trial court's suspicions about Brooks's income. While the court clearly expressed such doubts, the court did so about *both* parties and ultimately concluded that the findings it entered represented its best estimate of their incomes. Furthermore, the court's expressed suspicion does not rise to the level of a "finding there were special circumstances that justified deviation" from the child support guidelines. *Hill v. Hill,* 841 P.2d 722, 724–25 (Utah App.1992).

Nunley also raises several arguments concerning the trial court's failure to impute additional income to Brooks and to adjust his income because of its tax-free status. The court did not mention the imputation of income in its order, except to state that it believed both parties were hiding income; however, it did note orally that it did not agree with the other evidence Nunley offered about underemployment and unemployment. Because we find these arguments to be without merit, we decline to address them in

The trial court's rulings seem internally inconsistent. If, as the court ruled, there has been no material change in circumstances justifying an increase in child support under the guidelines, the court's only legal basis for imposing an additional $300 monthly child support obligation is a finding that "use of the guidelines would be unjust, inappropriate or not in the best interest of [the] child." Utah Code Ann. § 78–45–7.2(3) (Supp.1994).

■ This inconsistent determination results from the trial court's incomplete analysis of material change in circumstances. Factors other than a change in relative income affecting the child support calculation can constitute a material change in circumstances allowing the court, on a modification petition, to reach the issue of whether a deviation from the guidelines is now appropriate. Significant changes in the factual circumstances of the child, such as special education or health needs, which, if in existence at the time of the original decree would have permitted an upward deviation from the guidelines allow a court to consider whether to deviate from the guidelines in a modification proceeding. *See* Utah Code Ann. § 78–45–7(3)(e) (Supp.1994) (upon finding sufficient evidence to rebut the guidelines the court shall consider all relevant factors, including the needs of the child, when establishing support).

Thus, we reverse and remand, rather than merely vacate the private school tuition award. We do so for several reasons. First, neither the court nor the parties focused on whether the facts presented as to Michelle's special circumstances amounted to a substantial change of circumstances and thus justified a reassessment of whether an upward deviation from the child support guidelines was appropriate. Moreover, the record contains sufficient facts, although in dispute, to support a substantial change in circumstances, and with appropriate findings to support an upward deviation from the child support guidelines. Therefore, rather than simply reversing the award of private school fees, we reverse and remand for either the entry of the requisite findings sufficient to support an upward deviation from the child

detail. *State v. Carter,* 776 P.2d 886, 889 (Utah

support guidelines, or the vacation of the award of all past and future school-related expenses.

■ If the court eliminates the award of prospective private school fees, it must also vacate the awards of $9580 and $2900 representing one-half of various school-related costs incurred during the period from November 21, 1988 through September 16, 1991. The award of these costs can be maintained only if the trial court finds special circumstances allowing deviation from the guidelines and orders Brooks to pay one-half of the private school expenses. In that event, the court may reinstate the private school awards only back to the date Nunley filed her amended petition and gave Brooks notice of that petition. *See* Utah Code Ann. § 30–3–10.6(2) (Supp.1994) ("A child ... support order may be modified with respect to any period during which a petition for modification is pending, but only from the date notice of that petition was given...."); *Kammersell v. Kammersell,* 792 P.2d 496, 497 n. 3 (Utah App.1990). In no event may the award be retroactively increased beyond the period during which the modification petition was pending. *See Karren v. Department of Social Serv.,* 716 P.2d 810, 813 (Utah 1986) (stating "only prospective modification of a support obligation is proper"); *Larsen v. Larsen,* 561 P.2d 1077, 1079 (Utah 1977) ("[A]limony and support payments ... cannot be changed or modified after the installments have become due.")

B. Social Security Disability Benefits and Child Support

■ Brooks urged the trial court to offset his child support obligation by the disability dependent benefits Social Security pays to Michelle due to his disability. In its April 26, 1991 ruling, the trial court did allow Brooks to offset his share of the private school expenses by the amount of Social Security benefits Michelle receives. However, Nunley submitted a motion for a post-trial determination of this issue, and after reconsideration the court reversed its ruling. In its final order, the court found:

1989).

[The court] does not have the power to assign the social security auxiliary benefits received by the parties' minor child (by reason of Defendant's permanent disability) to meet the Defendant's obligation to pay one-half of the child's private-school expenses. The social security auxiliary benefits received by the minor child do not reduce the disability benefits otherwise due to or received by the Defendant and, in fact, said auxiliary benefits are for the minor child's use only and cannot be judicially assigned or designated for any other use. The Court finds that the Defendant should meet his obligations for one-half of the minor child's private school expenses from his own resources and not from the child's social security benefits.

The court considered itself *legally* prohibited from allowing Brooks a credit against his child support obligation for the disability benefits Michelle receives. We thus review the court's conclusion for correctness, giving no special deference on appeal. *Howell v. Howell,* 806 P.2d 1209, 1211 (Utah App.), *cert. denied,* 817 P.2d 327 (Utah 1991).

Nunley asserts that the trial court did not have the power to assign the Social Security benefits to satisfy Brooks's obligation for private school costs. Nunley relies on a provision of the Social Security Act, 42 U.S.C. § 407(a) (1988), to support her argument that the court may not "assign or transfer the minor child's Social Security benefits, received due to [Brooks's] disability, to satisfy [his] obligation for payment of private schooling expenses." Section 407(a) provides:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, *or other legal*

*process,* or to the operation of any bankruptcy or insolvency law.

*Id.* (emphasis added).

Nunley would have this court hold that section 407 prohibits any sort of credit toward Brooks's child support obligation. That is too broad a reading of section 407 and is wholly inconsistent with Utah law. *See* Utah Code Ann. § 78–45–7.5(8)(b) (Supp.1994) (set forth in full below). Rather, the correct reading of section 407 is that it prevents the trial court from *ordering* that the benefits received on Michelle's behalf be spent for some particular purpose. In other words, the court may not subject those benefits to any "legal process." *See Fetterusso v. State,* 898 F.2d 322, 327–28, *aff'd,* 898 F.2d 322 (2d Cir.1990); *Russo v. Russo,* 1 Conn.App. 604, 474 A.2d 473, 476–77 (1984).

The parties' narrow characterization of the issue obscures the true matter in controversy on appeal: whether a court may consider a child's receipt of Social Security benefits due to a parent's disability as a credit against that parent's child support obligation. This is a question of first impression for this court. However, the Legislature in formulating Utah's child support guidelines has given courts such discretion. In part, section 78–45–7.5 provides:

Social Security benefits received by a child due to the earnings of a parent may be credited as child support to the parent upon whose earning record it is based, by crediting the amount against the potential obligation of that parent.

Utah Code Ann. § 78–45–7.5(8)(b) (Supp. 1994). Moreover, most jurisdictions that have considered this issue have allowed such a credit.

Although reluctant to permit a parent credit toward an arrearage,[5] most courts

---

5. Numerous courts have rejected the use of Social Security disability and retirement benefits towards child support arrearages. *See, e.g., Kirwan v. Kirwan,* 606 So.2d 771, 772–73 (Fla.Dist. Ct.App.1992) (refusing to allow amount by which child's monthly social security benefits exceeded father's child support obligation to be used to satisfy past arrearages); *Jenerou v. Jenerou,* 200 Mich.App. 265, 503 N.W.2d 744, 746 (1993) ("[A] parent should not get credit against a child sup-

port arrearage merely because the child received benefits from the federal government."); *Mask v. Mask,* 95 N.M. 229, 620 P.2d 883, 885–86 (1980) (prohibiting use of Social Security retirement benefits toward arrearages accumulated before benefits were received by the child); *Fuller v. Fuller,* 49 Ohio App.2d 223, 360 N.E.2d 357, 358–59 (1976) (refusing to apply benefits to arrearages resulting from violation of support obligation because to do so would be "ordering the

have been willing to credit a parent's on-going monthly support payments when the child receives benefits directly. *See generally* Bruce I. McDaniel, Annotation, *Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child,* 77 A.L.R.3d 1315 (1977); *accord Pontbriand v. Pontbriand,* 622 A.2d 482, 484 (R.I.1993) ("[T]he overwhelming majority of states that have considered this issue allow a credit for Social Security benefits paid to dependent children."). Courts that allow a credit follow one of four approaches in determining whether to credit a disabled parent for benefits the child receives. A court may: (1) in its discretion award a credit; (2) give credit only when special requirements are met; (3) presume credit should be applied; or (4) grant a credit as a matter of course. Cases which exemplify these approaches include: *Chase v. Chase,* 74 Wash.2d 253, 444 P.2d 145, 149 (1968) (allowing court in its discretion to apply credit, but only by affirmative action); *Gerlich v. Gerlich,* 379 N.W.2d 689, 691 (Minn.Ct.App.1986) (allowing credit when receipt of benefits makes terms of original order unfair or unreasonable); *Children & Youth Serv. v. Chorgo,* 341 Pa.Super. 512, 491 A.2d 1374, 1378 (1985) (presuming credit is appropriate absent showing to the contrary); and *Pontbriand,* 622 A.2d at 485 (applying automatic credit).

The relevant Utah statute, section 78–45–7.5(8)(b) of the Utah Code, quoted in its entirety above, contemplates a discretionary approach. That is the approach we now adopt.[6]

The trial court should in its discretion consider these benefits because:

children to pay the accrued arrearages for their own support").

These cases are distinguishable from the instant case because Brooks has no accrued arrearages. The amounts that the trial court ordered him to pay for past private school expenses do not constitute arrearages because Brooks was not ordered to pay them until the entry of the order at issue in this appeal. In other words, Brooks was not delinquent in satisfying his child support obligation; instead, he was charged retroactive to the date of the amended petition for the amount of the modification, pursuant to Utah Code Ann. § 30–3–10.6(2) (Supp.1994).

Social security dependent disability benefits replace support the child loses upon the disability of the wage earner responsible for the child's support, and such benefits substitute for a parent's loss of earning power and obligation to support his dependents. Thus, the source and the purpose of social security dependent benefits are identical to the source and purpose of child support—both come from a noncustodial parent's wages or assets and both provide for the needs of the dependent child and, for our purposes, "no princip[led] distinction exists between social security benefits and child support payments."

*In re Marriage of Henry,* 156 Ill.2d 541, 190 Ill.Dec. 773, 779, 622 N.E.2d 803, 809 (1993) (citations omitted).

In conclusion, we hold that a trial court may, in its discretion, consider a child's receipt of Social Security disability benefits and allow a disabled parent credit for those benefits against the parent's child support obligation. We emphasize, however, that a trial court may not order that those Social Security benefits be subject to legal process. *See, e.g., Philpott v. Essex County Welfare Bd.,* 409 U.S. 413, 417, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973) (prohibiting use of legal process to reach Social Security benefits); *Fetterusso,* 898 F.2d at 327–28; *Russo,* 474 A.2d at 476–77. Thus, on remand, the court is free to allow Brooks a credit against his child support obligation for the benefits Michelle receives as a result of his disability.

## II. VISITATION EXPENSES

■■■■ In her cross-appeal, Nunley attacks the entry of judgment against her for one-half of the costs of transportation for

6. Courts in several jurisdictions have adopted this approach. *See, e.g., Fowler v. Fowler,* 156 Conn. 569, 244 A.2d 375, 377 (1968) (holding it is "[w]ithin the sound discretion of the trial court" to determine whether Social Security benefits may satisfy a child support obligation); *Mask,* 620 P.2d at 885 (allowing credit "when dictated by equitable considerations"); *McNeal v. Cofield,* 78 Ohio App.3d 35, 603 N.E.2d 436, 439 (1992) (stating "it may be equitable to adjust the child support need by the amount of Social Security benefits received by the child").

Brooks's visitation with Michelle from and after the date she filed her amended petition to modify the divorce decree. A modification is proper when the moving party demonstrates a substantial change in circumstances subsequent to the entry of the decree not contemplated at that time. *Muir v. Muir*, 841 P.2d 736, 739 (Utah App.1992). This court reviews a trial court's modification determination for an abuse of discretion. *Hill v. Hill*, 841 P.2d 722, 724 (Utah App.1992).

The California divorce decree required Nunley to pay transportation costs for Michelle's travel between Salt Lake City and Los Angeles to visit Brooks because Nunley was employed by TWA Airlines. The California provision was predicated on the ease and economy with which Nunley could procure airline tickets.

The trial court concluded that a substantial change in circumstances had occurred regarding the payment of transportation expenses, since Nunley no longer works for TWA. We agree. Further, we cannot say the trial court abused its discretion in modifying the order to provide for an equal division of visitation costs. *See Myers v. Myers*, 768 P.2d 979 (Utah App.1989) (affirming trial court judgment apportioning travel costs for visitation with the noncustodial parent). We therefore affirm the award apportioning the cost of visitation equally between the parties.

## CONCLUSION [7]

We vacate the award of current and past private school costs. However, we remand for further consideration in light of our opinion as to whether an upward deviation from the child support guidelines to partially cover these costs is warranted. If the court determines an upward deviation is warranted it must make detailed findings supporting such

a deviation. On remand, the trial court is free to consider the receipt of Social Security dependent benefits as a credit to Brooks in its calculations. Finally, we affirm the order dividing equally the costs of transportation for visitation.

JACKSON and ORME, JJ., concur.

---

[7]. Brooks has also challenged the trial court's acceptance of certain pieces of documentary evidence, submitted after trial, to substantiate Nunley's claim for one-half of the private school and medical expenses already paid. He argues that the denials of his request for a hearing on the issue were abuses of discretion. We have considered the arguments he raises and find them to be without merit; accordingly, we do not treat the issue. *State v. Carter*, 776 P.2d 886, 889 (Utah 1989) (noting appellate court need not address meritless arguments).

Furthermore, because Brooks challenged the award of past medical and dental expenses only in this respect, we affirm the award of those expenses. However, as discussed more fully in Section I.A. of this opinion, the award of past medical and dental expenses may date back only to the date of the filing of the amended petition and no earlier. Utah Code Ann. § 30–3–10.6(2) (Supp.1994); *accord Kammersell v. Kammersell*, 792 P.2d 496, 497 n. 3. (Utah App.1990).