2009 UT App 77

**Leslie Smith TRUBETZKOY,**
Petitioner and Appellant,

v.

**Sergei TRUBETZKOY, Respondent**
and Appellee.

No. 20080406–CA.

Court of Appeals of Utah.

March 19, 2009.

Toni Marie Sutliff, Salt Lake City, for Appellant.

Gregory B. Wall, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and McHUGH.

## OPINION

McHUGH, Judge:

¶1 Leslie Smith Trubetzkoy (Wife) appeals various aspects of the trial court's Findings of Fact and Conclusions of Law (the Findings and Conclusions) and its Decree of Divorce. Wife argues that the trial court improperly granted Sergei Trubetzkoy (Husband) joint legal custody of the parties' minor child[1] and erred in its award of parent-time. Wife further challenges the trial court's division of marital assets. In addition, Wife claims that the trial court erred in refusing to order an accounting of the parties' business. Finally, Wife asserts that she is entitled to a divorce due to adultery, rather than irreconcilable differences. We affirm the trial court's rulings on all but the order of joint legal custody. On the legal custody issue, we reverse and remand.

## BACKGROUND

¶2 Husband and Wife married on July 3, 1993, and they divorced on December 23, 2007. They have one child, who was born in 2000 and was diagnosed with diabetes in 2003. The child also has a mood disorder.

¶3 Husband and Wife met while working at a renaissance faire in southern California in 1987. At the time, Husband was reading palms and tarot cards, while Wife worked for the organization running the faire. Husband also sold imported goods after hours. When Husband began selling the imported goods at the faire, he hired Wife to manage the booth. Beginning in 1987, the parties traveled between faires in northern and southern California and lived together in two vans and a house truck. Around 1990, the parties traveled abroad together to purchase inventory for the booths and began operating Bazarre Traders (the Business) jointly. In 1993, the year the parties married, they filed a Doing Business As form in California, which stated that the Business commenced in 1990. By 1998, the Business had expanded to include

carts from which they sold merchandise. Husband also began selling items from these carts at faires in Arizona, Colorado, and Texas.

¶4 In 1997, the parties opened a retail store in Salt Lake City to generate income during the winter.[2] From 1997 to 2003, both parties operated the store during the month of December. Then Husband would travel to purchase inventory, and Wife would operate the store and manage the incoming shipments of goods. Following their separation in February 2003, Husband conducted nearly all of the business at the faires, and Wife exclusively ran the retail store. After the parties' separation, Wife operated a booth at a Colorado faire without Husband's assistance.

¶5 Approximately one year after the parties separated but before the divorce was final, Husband began a relationship with Antonella Catalano. Husband refers to Ms. Catalano as his girlfriend, shares bank accounts with her, and travels with her to the faires.

## ISSUES AND STANDARDS OF REVIEW

¶6 Wife first argues that the trial court misinterpreted the statutory requirements for an order of joint legal custody, see Utah Code Ann. § 30-3-10.2 (2007). Alternatively, she claims that the trial court erroneously ordered joint legal custody because it relied upon an outdated version of the relevant statute. See generally Utah Code Ann. § 30-3-10 (Supp.2008); id. § 30-3-10.2. In custody matters, appellate courts generally give the trial court considerable discretion, see Carsten v. Carsten, 2007 UT App 174, ¶3, 164 P.3d 429, because the trial court's proximity to the evidence places it in a better position than an appellate court to choose the best custody arrangement. See Shioji v. Shioji, 712 P.2d 197, 201 (Utah 1985). That broad discretion, however, must be guided by the governing law adopted by the Utah Leg-

---

1. The parties stipulated to Wife receiving sole physical custody.

2. The renaissance faires that the parties attended run from spring until fall. In prior years, Husband traveled to southeast Asia during the winter

months to purchase more inventory, while Wife worked various jobs to support the family. The parties purchased and remodeled the store using both of their incomes and Wife's workers' compensation money.

islature, *see* Utah Code Ann. §§ 30–3–10, – 10.2. We review questions of statutory interpretation for correctness. *See Wells ·v. Wells,* 871 P.2d 1036, 1038 (Utah Ct.App. 1994).

▇ ¶ 7 Wife next claims that the trial court erred in its award of parent-time because it erroneously interpreted the parent-time statutes and failed to consider the child's best interest. As a general rule, "we will not disturb the trial court's visitation determination absent a showing that the trial court has abused its discretion." *Childs v. Childs,* 967 P.2d 942, 946 n. 2 (Utah Ct.App. 1998). Again, we review the trial court's interpretation of a statute for correctness. *See Wells,* 871 P.2d at 1038.

▇ ¶ 8 Wife's third argument concerns the distribution of the marital property. " 'Trial courts have considerable discretion in determining ... property distribution in divorce cases, and [their decisions] will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated.' " *Stonehocker v. Stonehocker,* 2008 UT App 11, ¶ 8, 176 P.3d 476 (omission in original) (quoting *Howell v. Howell,* 806 P.2d 1209, 1211 (Utah Ct.App.1991)). Indeed, the trial court's discretion is so broad "that its actions enjoy a presumption of validity." *Elman v. Elman,* 2002 UT App 83, ¶ 17, 45 P.3d 176 (internal quotation marks omitted).

▇ ¶ 9 In a related challenge, Wife claims that the Business is a de·facto partnership and that she was therefore entitled to an accounting of the Business's affairs and a share of its revenues. We review the denial of an accounting and subsequent division of the tangible business assets for an abuse of discretion. *See Stonehocker,* 2008 UT App 11, ¶ 8, 176 P.3d 476.

▇ ¶ 10 Finally, Wife contends that the trial court erroneously granted her divorce due to irreconcilable differences, rather than adultery. We review the trial court's interpretations of law for correctness. *See Wells,* 871 P.2d at 1038.

## ANALYSIS

### I. Joint Legal Custody

▇ ¶ 11 Wife argues that the trial court's ruling did not comply with the requirements of Utah law because "[n]either party filed a parenting plan" and "[t]he trial court did not make any findings as to the best interest of the child after considering the relevant factors." *See generally* Utah Code Ann. § 30–3–10.2 (2007). Husband counters that a parenting plan is not necessary because the trial court must consider joint custody in every case and may make an award of joint custody when it is in the child's best interest. *See id.* § 30–3–10(1)(b) (Supp.2008). " '[W]here statutory language is plain and unambiguous, this Court ... [is] guided by the rule that a statute should generally be construed according to its plain language.' " *Sorenson's Ranch Sch. v. Oram,* 2001 UT App 354, ¶ 8, 36 P.3d 528 (quoting *In re A.B.,* 936 P.2d 1091, 1097 (Utah Ct.App. 1997)).

¶ 12 Under the express language of the custody statutes, both the filing of a parenting plan and a determination that joint legal custody is in the child's best interest are required before an order of joint legal custody may be issued. *See* Utah Code Ann. §§ 30–10–10.2, –10.8 (2007). The current version of the statute, which was in effect at the time of these custody proceedings, provides, "The court may order joint legal custody ... *if* one or both parents have filed a parenting plan ... *and* it determines that joint legal custody ... is in the best interest of the child." *Id.* § 30–3–10.2 (emphasis added). Likewise, section 30–3–10.8, which discusses parenting plans, mandates that "any party requesting ... joint legal ... custody ... *shall* file and serve a proposed parenting plan." *Id.* § 30–3–10.8(1) (emphasis added). *See generally Diener v. Diener,* 2004 UT App 314, ¶ 12, 98 P.3d 1178 ("Ordinarily, the use of the word 'shall' in a statute creates a mandatory condition eliminating any discretion on the part of the courts."). In addition, section 30–3–10.3 defines the terms of a joint legal custody order, stating, "The court shall, where possible, include in the order the terms of the parenting plan provided in ac-

cordance with Section 30–3–10.8." Utah Code Ann. § 30–3–10.3(3) (2007).

¶ 13 Husband relies on section 30–3–10(1)(b) for his position that no parenting plan was required: "The court shall, in every case, consider joint custody but may award any form of custody which is determined to be in the best interest of the child." *Id.* § 30–3–10(1)(b). However, that same section later assumes the existence of a parenting plan: "This section establishes neither a preference nor a presumption for or against joint legal custody . . . but allows the court and the family the widest discretion *to choose a parenting plan . . . .*" *Id.* § 30–3–10(5) (emphasis added). Reading the statutory provisions as a whole, we conclude that the legislature unambiguously provided that joint legal custody is available "if one or both parents have filed a parenting plan . . . *and* it determines that joint legal custody . . . is in the best interest of the child." *Id.* § 30–3–10.2(1) (emphasis added). Because neither party filed a parenting plan, joint legal custody was unavailable. We therefore remand for an order of sole legal custody.[3] *See id.* § 30–3–10(1)(a).[4]

## II. Parent–Time

■ ¶ 14 Wife next asserts that the trial court erred in its award of parent-time. When the parents cannot agree on a visitation arrangement, the Utah Code delineates minimum parent-time schedules. *See* Utah Code Ann. § 30–3–35(2) (Supp.2008) (in-state visitation); *id.* § 30–3–37(5) (out-of-state visitation). Because Husband resides primarily in California, the trial court initially awarded Husband parent-time according to the statutory schedule for parents who reside more than 150 miles from the child. *See id.* § 30–3–37. Section 30–3–33(9) further provides, however, that "[t]he court may make alterations in the parent-time schedule to reason-

ably accommodate the distance between the parties and the expense of exercising parent-time." *Id.* § 30–3–33(9).

¶ 15 Husband lives out of a trailer and travels among a number of states to participate in the renaissance faires. The nature of Husband's business and living arrangements limits his resources for travel as well as his availability to exercise parent-time. Sporadically, Husband travels to Utah. Therefore, the trial court adjusted the parent-time schedule to follow the in-state plan, *see id.* § 30–3–35(2), for periods when Husband is in Salt Lake City. The court then tempered the unpredictability of Husband's schedule with limits on his ability to disrupt Wife and the child's plans. The trial court's order requires Husband to notify Wife at least one week in advance of exercising parent-time in Utah and at least three weeks before exercising out-of-state parent-time. These case-specific modifications are precisely the type best left to the trial court and are contemplated by section 30–3–33(9). *See id.* § 30–3–33(9). The trial court did not exceed its discretion in adjusting the parent-time schedule to accommodate Husband's travel and budgetary restraints.

■ ¶ 16 Wife further argues that the order regarding parent-time should be reversed because it is contrary to the best interests of the child. The parent-time statute provides that "the parent-time schedule as provided in Section[ ] 30–3–35 . . . shall be presumed to be in the best interests of the child." *Id.* § 30–3–34(2) (Supp.2008). The statute continues: "The [statutory] parent-time schedules shall be considered the minimum parent-time to which the noncustodial parent . . . shall be entitled unless a parent can establish otherwise by a preponderance of the evidence that . . . less parent-time

---

3. In doing so we note that although the trial court erroneously granted joint legal custody, it thoughtfully awarded Wife the deciding vote in the event of a dispute over the child's medical treatment or educational needs, the only two areas on which Wife raised specific concerns about joint legal custody. *See generally* Utah Code Ann. § 30–3–10.1(1)(b) (2007) (giving the trial court the power to "award . . . exclusive

authority . . . to one parent to make specific decisions").

4. In light of our reversal due to the lack of a parenting plan, we need not reach Wife's best interest argument. We likewise do not address Wife's alternative argument that the trial court erred in imposing a presumption in favor of joint legal custody.

should be awarded...."[5] *Id.* Thus, Wife had the burden to prove by a preponderance of the evidence that less parent-time is warranted here. *See id.*

¶ 17 In awarding parent-time according to the statute, the trial court concluded that Wife failed to meet her burden. Wife asserts that the trial court exceeded its discretion in reaching that conclusion. In support of her argument, Wife contends that Husband has inadequate experience dealing with the child's medical needs. Therefore, Wife contends that Husband should first exercise parent-time in Salt Lake City where she can be nearby in the event of an emergency. The trial court rejected Wife's argument, crediting Husband's testimony that he had the requisite experience and education to care for the child. We will not substitute our judgment for that of the trial court. *See In re R.A.F.,* 863 P.2d 1331, 1333 (Utah Ct.App. 1993) ("The trial court is in a better position to observe factors bearing on credibility and we will not disturb a factual assessment unless it clearly appears that the trial court was in error.").

¶ 18 Wife also alleges that Husband has an inconsistent and detached relationship with the child. Thus, Wife asserts that Husband should be required to develop a more consistent relationship with the child before exercising the full visitation provided by the statute. Although the child's therapist agreed that a consistent and predictable relationship between the child and Husband should be established, the therapist had no reason to believe that Husband could not adequately care for the child. The therapist also testified that extended visits with Husband were "something [that the child] would probably really like." Considering all of the conflicting evidence, the trial court issued its decision awarding parent-time according to the statutory guidelines. It did not exceed its broad discretion in doing so. *See Childs v. Childs,* 967 P.2d 942, 946 n. 2 (Utah Ct.App. 1998); *R.A.F.,* 863 P.2d at 1333.

### III. The Property Distribution

**A. Wife Did Not Alert the Trial Court that the Findings of Fact or Conclusions of Law were Inadequate**

¶ 19 Wife's third argument involves the distribution of the parties' marital property. In particular, she contends that the trial court failed to make the requisite findings of fact before distributing the marital property and that the evidence in the record and the trial court's findings do not support the distribution.

¶ 20 The Findings and Conclusions were drafted by Wife's trial counsel and then became the subject of objections and concerns raised by each party. After the first draft was prepared, Husband filed objections to it. Wife responded to Husband's objections and also reasserted arguments previously raised in a motion to reconsider. In that motion to reconsider, Wife claimed the property distribution was inequitable because she received approximately $35,000 less than Husband. Wife also asserted that she was a "full partner in the business" and was thus entitled to an equal distribution of its assets. Wife characterized her motion to reconsider as "merely offering the Court the opportunity to review the evidence in the record and to amend its judgment in accordance with the evidence."

¶ 21 At a hearing on the objections on February 11, 2008, Wife filed a Memorandum in Support of [Wife]'s Position at Post Trial Hearing, which stated, "[Wife] is a partner in the parties' business, and as such should

---

5. A parent arguing that there should be more or less parent-time should do so based on several criteria, including

(a) parent—time would endanger the child's physical health or significantly impair the child's emotional development;

....

(i) the involvement or lack of involvement of the noncustodial parent in the school, community, religious, or other related activities of the child;

....

(k) a substantial and chronic pattern of missing, canceling, or denying regularly scheduled parent—time;

....

(*o*) any other criteria the court determines relevant to the best interests of the child.

Utah Code Ann. § 30–3–34(2) (Supp.2008).

receive an equal disposition of the parties' assets." During the hearing, Wife argued that Husband sent Wife home from a faire and would not allow her to participate in future faires. Wife argued that this was "like one business partner locking the other one out of a store." The trial court disagreed and refused to include a finding of fact that Husband prohibited Wife from participating in the faires. After the hearing, Wife prepared a revised Findings of Fact and Conclusions of Law, to which Husband again objected. In response, the court ordered Wife to modify the Findings of Fact and Conclusions of Law further. The trial court then executed the final version of the Findings and Conclusions.

¶ 22 Despite a careful review of the extensive debate about the form and content of the Findings and Conclusions, we find no indication that Wife alerted the trial court to the need to make additional findings or conclusions. Instead, Wife's arguments were limited to the position that the evidence did not support certain findings of fact and conclusions of law reached by the district court. Consequently, Wife may not challenge the adequacy of the findings of fact on appeal. *See In re K.F.*, 2009 UT 4, ¶ 63, 622 Utah Adv. Rep. 11, 201 P.3d 985 ("Judicial economy would be disserved if we permitted a challenge to the adequacy of the detail in the findings to be heard for the first time on appeal."); *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (alterations in original) (internal quotation marks omitted)). Therefore, we limit our review to the issue of whether the trial court's findings of fact were supported by sufficient evidence. *See K.F.*, 2009 UT 4, ¶ 60, 201 P.3d 985; *see also* Utah R. Civ. P. 52(b) ("[T]he question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the district court an objection to such findings....").

**B. The Property Distribution is Not Disproportionate Enough To Exceed the Trial Court's Broad Discretion**

¶ 23 Wife claims that the facts do not support a finding in favor of the judgment because the ultimate distribution is inequitable.[6] Under the trial court's property distribution, Husband received $168,250 of the $300,000 total marital estate and Wife received $132,676, a difference of approximately $35,000. This equates to an award of 44% of the estate to Wife and 56% to Husband. Wife argues that this distribution is so inequitable as to exceed the trial court's discretion. We do not agree.

¶ 24 An equitable distribution of marital property does not require strict mathematical equality. *See Teece v. Teece*, 715 P.2d 106, 107 (Utah 1986). In fact, the Utah Supreme Court has affirmed a marital property distribution with the same ratio as in this case, 56% and 44%. *See Yelderman v. Yelderman*, 669 P.2d 406, 408 (Utah 1983) (per curiam) (rejecting the husband's challenge where he received 56% of the assets).

¶ 25 Furthermore, the trial court distributed the tangible assets of the Business in an effort to allow Wife to continue with the retail portion and Husband to pursue the faire component of the Business. *See generally Gardner v. Gardner*, 748 P.2d 1076, 1079 (Utah 1988) ("The purpose of divorce is to end marriage and allow the parties to make as much of a clean break from each other as is reasonably possible."); *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 15, 176 P.3d 476 ("[T]he court must distribute the items of marital property in a manner consistent with [its] distribution strategy, with a view toward allowing each party to go forward with his or her separate life."). Indeed, this is precisely the relief Wife asked for in her trial brief filed with the trial court: "[Wife] understands that continued joint ownership of a closely held business in a divorce should be avoided. In this case, [Wife] is not asking for joint ownership of the business, but an

---

**6.** The trial court ordered that the property be distributed evenly. The parties do not contend that the division should be otherwise.

equitable division of its assets." (Citation omitted.)

¶ 26 The trial court did exactly as requested, dividing the marital assets as equally as possible, while still allowing the parties to go their separate ways. In doing so, the court adopted the values for the inventory and tangible assets offered by Wife. Although Husband was awarded the more valuable faire assets, the trial court made other concessions to Wife. It refused to impute income to her, despite evidence in the record that she was operating the retail store only on a part-time basis. In addition, Wife was awarded all of the equity in the marital home. Under the facts of this case, we cannot conclude that the difference in the value of the parties' awards is so inequitable as to constitute a "clear and prejudicial abuse of discretion." *See Howell v. Howell,* 806 P.2d 1209, 1211 (Utah Ct.App.1991).[7]

### C. The Trial Court Did Not Err in Dividing Only the Tangible Assets of the Business

¶ 27 Wife additionally contends that the division is not equitable because it does not take into account the Business revenue generated by Husband's work at the renaissance faires during the period that the parties were separated. Wife combines this argument with a contention that the trial court erred in refusing to require a partnership accounting. *See generally* Utah Code Ann. § 48–1–19 (2007) (granting a partner the right to a formal account as to partnership affairs under certain circumstances).

¶ 28 We first note that the Findings and Conclusions do not contain a conclusion of law as to whether the Business is a partnership. We also see nothing in the record to indicate that Wife requested a ruling on that issue.[8] At the objection hearing, Wife argued that Husband's telling her to go home

from a faire was "like one business partner locking the other one out of a store." Notwithstanding that assertion, Wife never alerted the trial court that she was seeking a ruling on whether the Business was, in fact, a partnership. Rather, Wife simply asserted that her efforts in support of the Business made her a "full partner" entitled to an equal portion of its assets. There is no indication that the trial court disagreed with Wife's position. In fact, over Husband's objection, the trial court found that "[t]he parties created an import and resale business together." Thus, the trial court agreed with Wife that the value of the Business should be divided as equally as possible. Whether it is or is not a partnership under Utah law, the trial court agreed that Wife was entitled to half of its value.

¶ 29 Where Wife and the trial court differ is that Wife contends that there were intangible "cash flow assets" of the Business to be divided. The district court was not convinced, concluding instead that "[t]he parties' business ha[d] no value beyond the inventory and carts" and that "[t]he income from the business [wa]s tied to the personal services of the parties." Consequently, the district court determined that Husband "does not owe [Wife] any money from the revenue of the Faire portion of the business after 2004." Instead, the trial court awarded Wife the retail store with its inventory and revenues and awarded Husband the faire inventory and equipment, together with its revenues. Thus, the trial court rejected Wife's argument that there was some independent "cash flow asset" associated with the Business and instead let each spouse keep the fruits of his or her labor during the period of separation. Furthermore, the trial court allowed Wife to retain the revenues she generated at the Colorado faire she participated in

---

7. Although we hold that the trial court did not exceed its discretion, we do recognize that $35,000 is a significant share of the $300,000 value of the total marital assets. Accordingly, this decision should not be understood to infringe upon the trial court's discretion to readjust its original distribution of the marital assets on remand, if it so chooses. We also note that Wife contends parity could be achieved by awarding her a larger share of the Colorado property.

8. Indeed, the record contains no discussion about the allocation of profits between the parties, as opposed to the sharing of revenues. *See* Utah Code Ann. § 48–1–4(3)–(4) (2007) ("The sharing of gross returns does not of itself establish a partnership.... The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner....").

after the parties separated.[9] The crux of Wife's objection to this decision is that the distribution of revenues in that manner was not equitable because the faire portion of the Business is more lucrative than the retail store. The trial court addressed this issue by including a finding that Wife could independently participate at the faires. Under the circumstances of this case where the revenues are the product of each spouse's labor, we conclude that the district court did not exceed its discretion. *See generally Elman v. Elman*, 2002 UT App 83, ¶ 17, 45 P.3d 176 (holding that the trial court's property distribution "enjoy[s] a presumption of validity" (internal quotation marks omitted)).[10]

## IV. Adultery

 ¶ 30 Wife argues that the trial court erroneously refused to modify the grounds of divorce from irreconcilable differences to adultery. Wife makes no challenge to the trial court's finding of irreconcilable differences. She simply prefers that the divorce be granted due to adultery instead. We see nothing in the governing statute, *see* Utah Code Ann. § 30-3-1 (2007), and Wife has not pointed us to any authority, that would require the trial court to adopt one ground for divorce over another. Therefore, we decline to order the trial court to substitute adultery for irreconcilable differences as the basis for the divorce.

## V. Attorney Fees

 ¶ 31 Finally, Wife requests attorney fees for her appeal. Typically, when a party to divorce proceedings is awarded attorney fees by the trial court and substantially prevails on appeal, that party also receives attorney fees on appeal. *See Wall v. Wall*, 2007 UT App 61, ¶ 26, 157 P.3d 341, *cert. denied*, 168 P.3d 819 (Utah 2007). Because Wife has not substantially prevailed on appeal, her request for attorney fees is denied. *See Hall v. Hall*, 858 P.2d 1018, 1027 (Utah Ct.App. 1993) (denying attorney fees to the appellee when the appellant won the major issues in dispute).

## CONCLUSION

¶ 32 We affirm on all issues appealed except joint legal custody. We hold that the trial court erred in awarding joint legal custody where neither parent filed a parenting plan. We affirm the award of parent-time and likewise hold that the property division was within the sound discretion of the trial court. The trial court did not exceed its discretion in failing to order an accounting. Finally, Wife is not entitled to a modification of the grounds for divorce. Therefore, we remand for further proceedings consistent with this decision.

¶ 33 WE CONCUR: RUSSELL W. BENCH and JAMES Z. DAVIS, Judges.

---

9. Wife also continued to share in the faire revenues through a joint bank account with Husband until September of 2005.

10. We also affirm the trial court's refusal to order an accounting. The trial court accepted all of Wife's values for the Business assets and distributed them as marital property. And, because the court gave each party the revenues that party generated during the separation and deter-mined that there was no inherent value in the Business beyond its inventory, there was no need for an accounting of the faire business during that period. Furthermore, Wife was entitled to obtain, and in fact did receive, extensive financial information from Husband pursuant to the Utah Rules of Civil Procedure. *See generally* Utah R. Civ. P. 26-37.