**2013 UT App 84**

## THE UTAH COURT OF APPEALS

MICHAEL DONNELLY,

*Petitioner, Appellant, and Cross-appellee,*

*v.*

STACY DONNELLY,

*Respondent, Appellee, and Cross-appellant.*

Opinion
No. 20100764-CA
Filed April 4, 2013

Third District, Silver Summit Department
The Honorable Keith A. Kelly
The Honorable Bruce C. Lubeck
No. 054500031

Steve S. Christensen and Lisa B. Thornton,
Attorneys for Appellant

Thomas R. King, Attorney for Appellee

JUDGE WILLIAM A. THORNE JR. authored this Opinion,
in which J. FREDERIC VOROS concurred.
JUDGE GREGORY K. ORME concurred, with opinion.

THORNE, Judge:

¶1 Michael Donnelly (Husband) appeals from the district court's Decree of Divorce, challenging the district court's temporary and permanent alimony awards and its orders pertaining to reimbursement of travel expenses and medical insurance premiums. Stacy Donnelly (Wife) cross-appeals, challenging the district

court's decision to value Husband's retirement plan as of the date of the parties' separation rather than the date of divorce. We affirm.

BACKGROUND

¶2      Husband and Wife married in 1996. The marriage produced three children, born in 1998, 2001, and 2002. There was apparently considerable discord between Husband and Wife over the course of the marriage.[1] The couple separated in January 2005, and Husband filed for divorce in February 2005. The district court entered a Temporary Order on April 12, 2005, awarding Wife temporary physical and legal custody of the children and ordering Husband to pay $1,719 per month in child support and $2,000 per month as temporary spousal support. The Temporary Order also awarded Wife possession of the marital home and ordered her to pay the mortgage and utilities on the residence, which amounted to approximately $2,000 per month. At the hearing on temporary orders, the district court also ordered Husband to pay the full amount of the children's medical insurance premiums during the pendency of the action.

¶3      In June 2005, Wife moved to New Jersey and took the children with her. They took up residence rent-free at Wife's parents' home. The ostensible reason for the relocation was to improve Wife's health, although the district court later determined that Wife moved "not solely for medical reasons but indeed to get away from [Husband], because of her views toward him." At some

---

1. The parties' conflicts continued throughout the litigation of this matter, with accusations of sexual abuse, interference with visitation, and disputes over the payment of alimony. Despite the importance of these issues to the parties—and to some aspects of the district court's decision-making—we largely omit them from our discussion of the case, except as necessary for our analysis of the legal issues properly before us on appeal and cross-appeal.

point following the move, the parties' youngest child was diagnosed with autism.

¶4    In November 2005, Husband moved for a reduction in temporary alimony on the grounds that he had lost $1,000 per month in income from a second job and that Wife's financial need had been reduced by approximately $2,000 when the marital home had sold in June, eliminating her mortgage and utility obligations. However, by this time, Wife claimed an increase in her monthly financial needs notwithstanding the elimination of her housing expenses. After "more carefully examin[ing] the previous orders, the submissions of the parties with respect to income and expenses, and the need and ability," the district court ordered that Wife's temporary alimony award be lowered to $1,500 per month, effective December 2005 (the Amended Temporary Order).

¶5    The matter finally came to trial on September 2, 3, and 4, 2009. In its September 16, 2009 Memorandum Decision, the district court awarded sole legal and physical custody of the children to Wife, with parent-time as recommended by a court-appointed custody evaluator. The district court found that Husband earned $7,031 per month in his employment as a systems analyst and software engineer. The court found that Wife was not employed, but, for the first time, imputed income to her in the amount of $1,600 per month. In light of these income findings, the district court ordered Husband to pay child support pursuant to Utah's child support guidelines, which was ultimately calculated to be $1,348 per month.

¶6    As to alimony, the district court applied the above income figures and made findings regarding each party's financial need. Husband claimed expenses of $4,529 per month, which the district court reduced to $4,100. Wife claimed monthly expenses of $5,703 per month, a figure that did not include housing expenses because she and the children continued to live rent-free at Wife's parents' home. Wife's claimed expenses included "special foods for [the parties' youngest child], lots of therapy for him, and so forth." The

district court allowed the "special needs child expenses" but disallowed other claimed expenses including play dates, classroom parties, and veterinary expenses. Ultimately, the court determined Wife's monthly need to be $4,200 per month. The court then made its alimony determination as follows:

> Weighing all the necessary factors (ability to provide for self, need, and ability to assist, and others), and given the rather imprecise nature of the true expenses of [Wife] particularly as they relate to [the parties' youngest child], and given her payments shown on many, many other things which appear to be unrelated to the claims concerning [the child] (clothing and restaurants and storage and pets appear to average over $1000 per month in total), and given the uncertain nature of [Wife's] ability to truly provide for herself considering her medical condition, and given the imprecise amounts needed for the travel [Husband] will incur to see the children, the court believes that $1000 per month is a fair and equitable amount of alimony.

¶7     The district court also entered judgment in favor of Wife for $18,861 in past due alimony and child support payments and $8,575 for reimbursement of medical expenses, allowing Husband a $5,658 credit for prior overpayments of child support that had resulted from a clerical error and a $5,944 credit for payments he had made toward marital debt. The court denied Husband's request that temporary alimony be retroactively reduced or eliminated as occasioned by the elimination of Wife's housing expenses when she moved to New Jersey. The court also denied Husband's request for reimbursement for the children's visitation-related travel expenses that were necessitated by Wife's relocation. The court addressed cross-motions for contempt, finding Wife in contempt for interfering with visitation but reserving the issue of sanctions. The court declined to find Husband in contempt for his support arrearages.

¶8      On September 14, 2009, after trial but prior to the issuance of the Memorandum Decision, Wife filed a motion asking the district court to reopen the case to accept additional evidence pertaining to the valuation and division of Husband's retirement account. The Memorandum Decision reserved this issue pending Husband's response, and the district court eventually granted the motion and held a hearing on the issues of when the account should be valued and how it should be divided. On December 24, the district court issued its Supplemental Memorandum Decision, ruling that the retirement account was to be equally divided between the parties based on the account's value as of the parties' January 2005 separation. On March 8, 2010, the district court entered a Decree of Divorce that incorporated both the Memorandum Decision and the Supplemental Memorandum Decision.

¶9      On March 22, Husband filed a motion seeking to amend the Decree of Divorce to order an offset to Husband's past-due support payments in the amount of one half of the children's medical insurance premiums that Husband had paid pursuant to court order during the pendency of the litigation. Wife opposed Husband's motions, arguing that Husband had never previously raised the issue despite having multiple appropriate opportunities to do so. The district court denied Husband's motion on June 22, 2010, "for the reasons stated by [Wife] in her opposition." Husband filed a timely notice of appeal, and Wife filed a timely notice of cross-appeal.

ISSUES AND STANDARDS OF REVIEW

¶10      On appeal, Husband raises various challenges to the district court's temporary and permanent alimony awards. We review the district court's alimony rulings under an abuse of discretion standard. *See Olson v. Olson*, 2010 UT App 22, ¶ 8, 226 P.3d 751 ("The district court is granted considerable discretion in determining alimony, and its alimony determinations will be upheld on appeal unless a clear and prejudicial abuse of discretion is demon-

strated." (citations and internal quotation marks omitted)); *Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 37, 176 P.3d 476 ("We review . . . grants of temporary support for an abuse of discretion.").

¶11 Husband next argues that the district court misinterpreted Utah's relocation statute, *see* Utah Code Ann. § 30-3-37 (LexisNexis Supp. 2012),[2] and generally abused its discretion when it refused to order Wife to reimburse husband for certain travel expenses incurred as a result of Wife's relocation. "[A] trial court's interpretation of a statute is a question of law that we review for correctness." *Davis v. Davis*, 2011 UT App 311, ¶ 9, 263 P.3d 520 (alteration in original).

¶12 Finally, Husband argues that the district court erred when it failed to order Wife to reimburse Husband for one half of the children's medical insurance premiums during the nearly five-year pendency of this action, which Husband had been ordered to pay at a March 2005 hearing on temporary orders. We review the district court's denial of a motion to amend a judgment pursuant to rule 59(e) of the Utah Rules of Civil Procedure for an abuse of discretion. *See Crestwood Cove Apts. Bus. Trust v. Turner*, 2007 UT 48, ¶ 40, 164 P.3d 1247 (stating that "a trial court has broad discretion to decide whether to grant relief under [rule 59]").

¶13 On cross-appeal, Wife argues that the district court erred in valuing Husband's retirement account at the time of the parties'

---

2. Utah Code section 30-3-37 has been amended and internally renumbered several times since the onset of this litigation. However, the language implicated by Husband's argument has remained substantively unchanged and, for convenience, we simply cite to the current version of the statute. We do the same with other relevant statutory provisions that have remained substantively unchanged from the versions applied by the district court over the lengthy course of this litigation.

separation rather than at the time of divorce. "Trial courts have considerable discretion in determining . . . property distribution in divorce cases, and [their decisions] will be upheld on appeal unless a clear and prejudicial abuse of discretion is demonstrated." *Trubetzkoy v. Trubetzkoy*, 2009 UT App 77, ¶ 8, 205 P.3d 891 (omission and alteration in original) (citation and internal quotation marks omitted).

ANALYSIS

## I. Alimony

¶14 The district court entered three different orders setting alimony in this matter. The April 2005 Temporary Order initially set Husband's temporary alimony obligation at $2,000 per month. The December 2005 Amended Temporary Order reduced temporary alimony to $1,500 per month. Finally, after trial, the September 2009 Memorandum Decision and subsequent Decree of Divorce awarded Wife monthly alimony in the amount of $1,000. Husband challenges each of these awards.[3]

### A. The Temporary Order

¶15 Husband argues that the district court failed to adequately consider his income and ability to pay and failed to consider Wife's potential to produce income when it entered the April 2005 Temporary Order awarding Wife $2,000 in temporary alimony. He

---

3. Husband's appellate brief raises multiple arguments implicating the three separate alimony orders, and it is sometimes difficult to match up each argument to the order or orders that it applies to. To the extent that the organization of Husband's brief has caused us to misidentify or otherwise miss intended arguments, we decline to address those arguments. *Cf.* Utah R. App. P. 24(k) (requiring briefs to be "logically arranged with proper headings").

further argues that the district court failed to enter adequate findings of fact on these issues.

¶16　As to Husband's income and ability to pay, Husband's brief on appeal acknowledges that the district court based the Temporary Order on a total monthly income to him of at least $7,158.[4] Husband's brief fails to explain, however, how this income was insufficient to pay the ordered $2,000 in temporary alimony. Husband's brief also fails to identify how and where Husband preserved this issue by arguing to the district court that the initial $2,000 award was too high for him to afford. *See* Utah R. App. P. 24(a)(5)(A) (requiring "citation to the record showing that the issue was preserved in the trial court"); *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("'[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue.'" (alterations in original) (citation omitted)). In light of this lack of demonstrated preservation, we decline to address this issue.

¶17　We also see no indication that Husband requested that the district court impute income to Wife at the time the Temporary Order was entered or that he objected when the district court failed to address the issue of imputing income to Wife. Accordingly, this issue is unpreserved for appeal, *see 438 Main St.*, 2004 UT 72, ¶ 51, and we decline to address it.

¶18　Finally, Husband argues that the district court failed to make factual findings in the Temporary Order on the issues of his ability to pay and imputation of Wife's income. However, Husband never objected to the alleged inadequacy of the district court's factual findings, and therefore the issue of the adequacy of the findings is itself unpreserved. *See In re K.F.*, 2009 UT 4, ¶ 60, 201

---

4. We note that the district court indicated at the hearing that it was also relying on the expectation that Husband would shortly be receiving an inheritance in the amount of approximately $30,000.

P.3d 985 (stating that a party "'waive[s] any argument regarding whether the district court's findings of fact were sufficiently detailed' when the [party] fails to challenge the detail, or adequacy, of the findings with the district court" (first alteration in original) (quoting *438 Main St.*, 2004 UT 72, ¶ 56)).

B. The Amended Temporary Order

¶19    Husband raises multiple arguments that the December 2005 Temporary Amended Order represented an abuse of the district court's discretion. Specifically, Husband argues that the district court failed to consider Wife's actual financial needs, Wife's access to financial assistance from her parents and a trust account, Wife and Husband's respective standards of living, Wife's ability to produce income, and Husband's ability to pay. Husband also argues that the district court failed to make adequate factual findings.

¶20    The Amended Temporary Order resulted from Husband's motion to reduce temporary alimony, which asserted only two grounds for a reduction: the sale of the marital home due to Wife's relocation to New Jersey, which resulted in the elimination of Wife's housing expenses, and Husband's reduction in actual income as a result of his loss of part-time employment at a second job. However, in response, Wife submitted updated financial information and represented to the court that, despite the elimination of her housing expenses, her monthly need had actually increased to $4,135. The issues of whether income should be imputed to Wife, Wife's parents' financial assistance to her outside of providing housing, and the existence and effect of the trust were not raised by Husband at this stage in the proceedings.

¶21    After a hearing on Husband's motion to reduce alimony, the district court entered the Amended Temporary Order reducing monthly temporary alimony from $2,000 to $1,500. The Amended Temporary Order stated that the reduction was a result of the district court "more carefully examin[ing] the previous orders, the

submissions of the parties with respect to income and expenses, and the need and ability." Husband neither objected to this order as being too cursory nor requested that the court enter specific factual findings relating to his arguments now on appeal.

¶22    Several of Husband's challenges to the Amended Temporary Order—i.e., Wife's access to financial assistance from her parents and a trust account, Wife and Husband's respective standards of living, and Wife's ability to produce income—were not preserved, and we decline to consider them. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. To the extent that Husband challenges the adequacy of the district court's factual findings, he also failed to preserve that issue by objecting to the Amended Temporary Order in the district court. *See In re K.F.*, 2009 UT 4, ¶ 60.

¶23    As to the issues that were actually presented to the district court—Wife's post-relocation financial needs and Husband's reduction in actual income—we cannot say that the district court's decision represents an abuse of discretion. The district court was presented with conflicting evidence about Wife's financial need, with Wife claiming monthly expenses of $4,135. After accounting for Wife's receipt of $1,719 in child support, Wife claimed unmet need exceeding $2,400 per month. We see no abuse of discretion in the district court's settling on the substantially lower amount of $1,500 per month. *See Stonehocker v. Stonehocker*, 2008 UT App 11, ¶ 39, 176 P.3d 476 ("The trial court has significant discretion in fashioning temporary support during the pendency of a divorce action.").

¶24    It is uncontested that Husband's actual income did drop due to the loss of his second job. However, nowhere in Husband's motion or supporting affidavit did Husband assert that this loss of income rendered him incapable of paying alimony in the amount of $2,000 or any other amount. At the motion hearing, Husband asserted that he could not afford to pay $2,000 per month but never specified to the court how much he could afford with his substan-

tial remaining income. Under these circumstances, the district court's significant reduction in temporary monthly alimony from $2,000 to $1,500—an amount much less than Wife's claimed unmet need—appears to fall well within the district court's "significant discretion." *See id.* For these reasons, we will not disturb or revisit the Amended Temporary Order.

C. The Memorandum Decision

¶25    Husband argues that the district court's permanent monthly alimony award of $1,000, as explained and ordered in the September 2009 Memorandum Decision, was also an abuse of discretion. Husband argues that the district court failed to take into account the financial assistance rendered to Wife by her parents, failed to properly limit Wife's standard of living to the $1,822 per month standard that she enjoyed at the time of the parties' separation, and abused its discretion by setting Husband's support obligations higher than his net income.

¶26    We disagree with Husband's assertion that the district court failed to consider Wife's parent's financial assistance to her. To the contrary, the Memorandum Decision explicitly recognized that Wife "lived and continues to live with her parents" and that Wife claimed "expenses of $5703 per month, again as noted without paying for housing." Thus, the district court recognized that Wife's financial need was significantly less than it would have been without her parents' assistance, and the court employed that lower need figure in making its ultimate decision on alimony. The district court acknowledged that "[o]ther than her parents' assistance, probably quite regularly, [Wife] has no other source of funds," but it also found that Wife's family is "not, of course, responsible for her and the court does not consider their abilities to provide help in the calculation of alimony." Thus, the district court clearly took

Wife's parents' assistance into account in making its alimony decision.[5]

¶27 Husband next argues that the district court should have limited Wife's financial need to the amount of her need at the time of the parties' separation. According to Husband, this amount should have been the $1,812—not including housing—reflected in her initial answers to interrogatories. Utah's alimony statute speaks specifically to this issue:

> As a general rule, the court should look to the standard of living, existing at the time of separation, in determining alimony in accordance with Subsection (8)(a). *However*, the court shall consider all relevant facts and equitable principles and *may, in its discretion, base alimony on the standard of living that existed at the time of trial*.

---

5. Husband asserts that the district court "should have treated [Wife's parents'] financial assistance as income" to Wife. However, Husband provides no Utah authority for the proposition that voluntary financial assistance between family members must be treated as income for alimony purposes. Further, the district court's finding that Wife's parents are "not, of course, responsible for her" recognized that Wife's parents were under no legal obligation to continue with their financial assistance and that such assistance could terminate at any time. *Cf. Ebbert v. Ebbert*, 744 P.2d 1019, 1023 (Utah Ct. App. 1987) ("Plaintiff argues the wealth of defendant's parents, who made large gifts of money to defendant during the marriage, should have been considered by the trial court. Such a consideration would be tantamount to imputing the wealth and income of her parents to defendant, and thereby imposing a duty of child support on the grandparents."). For these reasons, we are unpersuaded that the district court abused its discretion in declining to treat this voluntary assistance as income.

Utah Code Ann. § 30-3-5(8)(c) (LexisNexis Supp. 2012) (emphasis added). Here, the district court in its discretion considered circumstances arising after the parties' separation, most notably the additional and ongoing expenses incurred due to the autism diagnosis of the parties' youngest child.[6]

¶28 Husband also briefly argues that the district court erred when it set his total support obligations in an amount greater than his net income. Husband acknowledges that the district court found that he had monthly income of $7,031 and monthly expenses of $4,100, leaving nearly $3,000 per month available to pay his combined child support and alimony payment of $2,348 per month. Husband then asserts that his net income was only $5,700 per month, citing to paycheck evidence that was allegedly submitted at trial. Husband argues that his actual income left him only $1,600 per month to pay $2,348 in support obligations.

¶29 This argument amounts to a challenge to the district court's factual finding that Husband earned $7,031 per month. However, Husband's entire argument in this regard is the following assertion: "However, [Husband] had a net income of $5,700 before support payments." Although Husband provides a citation to "Addendum, Trial Exhibit 45, Paychecks," the record on appeal does not include the parties' trial exhibits. Husband's appellate brief addendum does contain a single printout, not marked as a

---

6. We agree with the concurring opinion's concern that expenses such as the autism-related expenses in this case should ordinarily be addressed under the rubric of child support rather than treated as a spouse's personal financial need for purposes of setting alimony. *See Farnsworth v. Farnsworth*, 2012 UT App 282, ¶¶ 27–28, 288 P.3d 298. Here, however, the parties litigated the issue as one of alimony, and neither party challenges that treatment on appeal. Accordingly, for purposes of our analysis, we accept the district court's use of the autism-related expenses as a factor in determining Wife's financial need.

trial exhibit, purporting to represent Husband's paycheck information from June 5, 2009. Assuming that this document is even in the record, Husband fails to explain how it demonstrates that his monthly income as of the September 2009 trial was $5,700 rather than $7,031 per month. Husband's summary argument fails to convince us that the district court clearly erred in determining Husband's income and, as a result, his ability to pay alimony in the amount of $1,000 per month. *See, e.g.*, *Henshaw v. Henshaw*, 2012 UT App 56, ¶ 10, 271 P.3d 837 ("We review challenges to findings of fact for clear error.").[7]

## II. Travel Expenses

¶30    Husband next argues that the district court erred when it refused to order Wife to reimburse him for portions of the children's travel expenses pursuant to Utah's relocation statute, Utah Code section 30-3-37. Husband argues that the district court misinterpreted the relocation statute to preclude reimbursement of travel expenses where, as here, the noncustodial parent is not current on all support obligations but has not been found in contempt. Husband further argues that the district court's denial of travel expense reimbursement was inequitable and represented an abuse of the court's discretion.

¶31    Utah Code section 30-3-37 governs parental relocation, which is defined as a parent "moving 150 miles or more from the residence of the other parent." Utah Code Ann. § 30-3-37(1) (LexisNexis Supp. 2012). Section 30-3-37(11) specifically addresses

---

7. To the extent that Husband's arguments pertaining to permanent alimony rely on allegedly inadequate factual findings, Husband did not object to the Memorandum Decision or otherwise complain to the district court about inadequate findings. Therefore, just as with the temporary alimony awards, any argument premised on a deficiency in the district court's factual findings was not preserved as an issue for appeal. *See In re K.F.*, 2009 UT 4, ¶ 60, 201 P.3d 985.

the allocation of travel expenses for children affected by a relocation:

> Unless otherwise ordered by the court the relocating party shall be responsible for all the child's travel expenses relating to [holiday visitation under subsections 30-3-37(6)(a) and (b)] and ½ of the child's travel expenses relating to [summer visitation under subsection 30-3-37(6)(c)], provided the noncustodial parent is current on all support obligations. If the noncustodial parent has been found in contempt for not being current on all support obligations, the noncustodial parent shall be responsible for all of the child's [statutory holiday and summer] travel expenses . . . unless the court rules otherwise.

*Id.* § 30-3-37(11). Husband argues that this language requires an order of reimbursement unless the noncustodial parent has been found in contempt or, put another way, requires a finding of contempt before reimbursement can be denied. Husband argues that the district court's order misinterpreted section 30-3-37(11) to allow for the denial of reimbursement despite the absence of a finding of contempt.

¶32    We disagree with Husband's interpretation of section 30-3-37(11). Section 30-3-37(11) requires a reimbursement order in only one circumstance, that of a noncustodial parent who is current on support payments.[8] By implication, the statute imposes no requirement that a noncustodial parent who is not current on

---

8. We acknowledge that, even where a noncustodial parent is current on support payments, the district court is expressly granted the authority to depart from the otherwise mandated result that reimbursement be ordered. *See* Utah Code Ann. § 30-3-37(11) (LexisNexis Supp. 2012) ("Unless otherwise ordered by the court . . . .").

support be awarded reimbursement. Because the statute simply does not address the allocation of travel expenses in situations—such as Husband's—where a noncustodial parent is behind on payments but has not been found in contempt, the district court retains its ordinary degree of discretion in allocating travel costs in those circumstances. *See generally Brooks v. Brooks*, 881 P.2d 955, 963 (Utah Ct. App. 1994) ("[W]e cannot say the trial court abused its discretion in modifying the order to provide for an equal division of visitation costs."). We see nothing in the statute that limits the district court's discretion to deny reimbursement merely because a noncustodial parent who is not current on support payments has not been found in contempt.

¶33    Contrary to Husband's suggestion on appeal, the district court did not rule that section 30-3-37(11) "prohibited [Husband] from receiving any reimbursement." Rather, the district court's Memorandum Decision stated, "Were [Husband] current on his child support obligation, he would be entitled to substantial reimbursement. Under the facts of this case and the relocation statute, he is not entitled to any reimbursement or credit." The Decree of Divorce further stated, "As a result of his arrears in spousal support, [Husband] is not awarded any reimbursement for travel expenses he has paid." Nothing in these rulings indicates that the district court interpreted section 30-3-37(11) to *prohibit* an award of relocation reimbursement in cases of non-contemptuous support arrearage.

¶34    Rather, the district court relied on Husband's substantial arrearage as a *reason* to exercise its discretion and deny Husband's reimbursement request. Nothing in Utah Code section 30-3-37(11) prohibits the district court from considering a noncustodial parent's arrearages in making a discretionary ruling about travel reimbursement. To the contrary, the statute makes the status of a parent's support payments a central part of the reimbursement analysis, and we see no abuse of the district court's discretion in denying Husband's request on that ground.

¶35    Husband also argues that the district court's travel expenses ruling was inequitable and an abuse of discretion under the circumstances. Husband raises multiple issues in support of this argument, but he failed to argue most of these issues to the district court. Arguments based on issues that were not presented to the district court are unpreserved, and we do not consider them.[9] *See Allen v. Ciokewicz*, 2012 UT App 162, ¶ 26, 280 P.3d 425 ("To preserve an issue for appeal, an appellant must present it to the trial court 'in such a way that the trial court has an opportunity to rule on that issue.'" (quoting *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801)).

¶36    The only issue that Husband did present to the district court was his argument that denying travel reimbursement would add "insult to injury" in light of Wife's cross-country move for the purpose of separating Husband from the parties' children. Husband's dismay with Wife's motives is understandable. However, we cannot say that the district court abused its discretion in denying travel reimbursement for the court's stated reason that Husband was in arrears on his support. *See generally Brooks*, 881 P.2d at 963 (reviewing a district court's order apportioning visitation costs only for an abuse of discretion).

¶37    In sum, the absence of a contempt finding against Husband did not preclude the district court from denying travel expense reimbursement under Utah Code section 30-3-37(11). The district court's decision to deny reimbursement in light of Husband's

---

9. These unpreserved issues include Husband's arguments that his support obligations had been improperly inflated due to a clerical error and other errors by the district court; his arguments that he had paid the children's full medical insurance premiums and $12,000 in marital debt that should have been paid by Wife; and his argument that Wife's payment of the requested travel expenses would have allowed Husband to pay more towards his support obligation.

significant support arrearage is consistent with section 30-3-37(11)'s emphasis on support status, and Husband has failed to establish that the court's ruling on travel expenses was inequitable or an abuse of discretion. For these reasons, we affirm the district court's travel expenses ruling.

### III. Medical Insurance Premiums

¶38 Husband's final issue on appeal is that the district court erred when it required him to pay all of the medical insurance premiums for the parties' children during the pendency of the proceedings and failed to order Wife to reimburse him for one half of those premiums in the final decree. This issue comes before us on the district court's denial of Husband's rule 59(e) motion to amend the Decree of Divorce, a ruling that we review only for an abuse of the district court's broad discretion. *See Crestwood Cove Apts. Bus. Trust v. Turner*, 2007 UT 48, ¶ 40, 164 P.3d 1247 (stating that "a trial court has broad discretion to decide whether to grant relief under [rule 59]").

¶39 The district court denied Husband's motion "for the reasons stated by [Wife] in her opposition," and we briefly summarize that opposition here. Wife argued that the district court's 2005 Temporary Order directed both parties to maintain insurance policies then in effect, which included Husband's medical insurance policy covering the children. Although the Temporary Order provided for each party to pay one half of the children's co-pays and uncovered medical expenses, it did not provide for the splitting or reimbursement of their medical insurance premiums. Husband then failed to raise the medical insurance premiums issue again prior to or during trial, nor did he raise the issue after trial when Wife successfully reopened the record to address the issue of Husband's retirement account. Wife argued that, in light of these facts, Husband should not be allowed to raise the issue of reimbursement for the children's medical insurance premiums for the first time in a post-judgment motion to amend the Decree of Divorce.

¶40    We agree with the district court that Wife's opposition states adequate grounds for the denial of Husband's rule 59(e) motion. It is readily apparent that both the parties and the court had strived mightily to accomplish a comprehensive resolution of the parties' disputes over financial matters and reimbursement of medical expenses prior to the issuance of the Decree of Divorce. Husband's failure to raise the issue at some point before the conclusion of that lengthy process acted as a waiver of any statutory right that he may have had to have Wife equally share the costs of the children's medical insurance.[10] *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("Issues that are not raised at trial are usually deemed waived."); *see also L.A. Young Sons Constr. Co. v. County of Tooele*, 575 P.2d 1034, 1040 (Utah 1978) ("The trial court did not err . . . in denying plaintiff's motion to amend the findings of fact and conclusions of law, since the matters proposed were an attempt to interpret the evidence according to plaintiff's theory of the case and to interject issues which were not tried." (footnote omitted)). In light of this waiver, the district court acted within its broad discretion in denying Husband's rule 59(e) motion.

---

10. Husband argues on appeal that Utah Code section 78B-12-212(3) mandates that every child support order "shall require each parent to share equally the out-of-pocket costs of the premium actually paid by a parent for the children's portion of insurance unless the court finds good cause to order otherwise." *See* Utah Code Ann. § 78B-12-212(3) (LexisNexis 2012). However, we see no indication that Husband ever referred the district court to section 78B-12-212(3) outside of his motion to amend the Decree of Divorce, and thus any failure by the district court to follow that section at the time of the Temporary Order or through its issuance of the divorce decree is unpreserved as an issue for appeal. *See 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801.

IV. Valuation of Husband's Retirement Plan

¶41     On cross-appeal, Wife argues that the district court abused its discretion by dividing Husband's retirement account between the parties based on its value as of the date of their separation, rather than the date of the Decree of Divorce. Wife is correct that, "[a]s a general rule, the marital estate is valued at the time of the divorce decree," *Rappleye v. Rappleye*, 855 P.2d 260, 262 (Utah Ct. App. 1993); *see also Berger v. Berger*, 713 P.2d 695, 697 (Utah 1985), and that "any deviation from the general rule must be supported by sufficiently detailed findings of fact that explain the trial court's basis for such deviation," *Rappleye*, 855 P.2d at 262. Here, however, the district court did explain its variation from the general rule, and Wife has not persuaded us that the district court's explanation was inadequate.

¶42     In its December 2009 Supplemental Memorandum Decision, the district court made factual findings that Husband had opened the retirement account in 1998—during the marriage—and continued to maintain the account through his employer as of the time of the ruling. The court found that the account had been funded entirely by Husband's employer's contributions and was valued at $65,478 at the time of the parties' separation and $125,489 as of September 2009, representing an increase in value since the separation of about $60,000.[11] The court also found that the account was a marital asset and was presumptively to be divided evenly.

¶43     Based on these factual findings, the district court concluded that the retirement account was to be divided evenly between the parties based on its value at the time of the separation. The district court provided the following explanation of its valuation decision:

---

11. The district court also found that the fund was increasing, presumably largely due to employer contributions, at the rate of about $900 per month.

> While the presumptive date of valuation is the time of the decree, that decree has yet to be achieved. The court does not fault anyone here for this delay, but the separation here is a full five years ago, minus a few days. During that time [Husband] has worked and his employer has contributed to this fund. It is often that in a marriage one party works outside the home and one works inside the home, thus enabling the other to work and in some cases accumulate a retirement fund. That happened here during the marriage . . . . [But] after separation, these parties were not only a failed partnership, but a partnership fully at odds with each other. [Husband] has been accused of serious misconduct. [Husband] did not see the children for lengthy periods. [Wife] did nothing, nothing whatever, to contribute to the accumulation of the retirement fund during this long five year separation. [Husband] continued to work and his employer continued to fund the retirement account. The court sees no reason in equity why [Wife] should benefit from this arrangement as she has not, during this time, been contributing to [Husband's] ability to work and support the family.

> The court believes that the date of separation should be the valuation date given all of the circumstances of this case as more fully explained in the [September 16, 2009 Memorandum Decision].

Thus, the district court relied on a combination of factors to determine the valuation date: Wife's failure to contribute to the account's increase in value during the parties' separation; Wife's failure to contribute to Husband's ability to work during the separation; the extraordinarily long duration of the separation; the hostilities between the parties and Wife's actions during the separation; and the "circumstances of this case" as more fully explained in the court's earlier Memorandum Decision.

¶44    Wife argues that the court's explanation of its decision is insufficient because, "other than its statements about [Wife] not contributing during the separation to the accumulation of the retirement or to contribute to [Husband's] ability to work and support the family, the court made no specific findings to support its decision to vary from the established rule." Wife also cites *Kemp v. Kemp*, 2001 UT App 157U, an unpublished memorandum decision in which this court found that the district court had abused its discretion by valuing retirement accounts at the date of separation rather than the date of the divorce decree.

¶45    We are not persuaded that the district court's explanation of its valuation decision is inadequate. The district court made findings that the substantial increase in the retirement account's value between the time of separation and the time of divorce was due to Husband's employer's contributions to the fund over the lengthy period of the parties' separation and that Wife had done "nothing whatever" to contribute to the fund's increase in value over that time. These findings distinguish this case from *Kemp*, in which the district court made no findings about the parties' post-separation contributions to each other's retirement accounts. *See* 2001 UT App 157U, para. 10. Other Utah cases addressing the valuation timing issue have often dealt with situations involving assets that increased or decreased in value following separation for reasons other than one party's post-separation contributions.[12] *See Berger*, 713 P.2d at 697 (valuing corporate stock); *Shepherd v. Shepherd*, 876 P.2d 429, 432–33 (Utah Ct. App. 1994) (marital estate generally); *Rappleye*, 855 P.2d at 262–63 (cash account); *Dunn v. Dunn*, 802 P.2d 1314, 1319–20 (Utah Ct. App. 1990) (retirement accounts brought into a marriage by the husband); *Morgan v. Morgan*, 795 P.2d 684, 688 (Utah Ct. App. 1990) (bank accounts); *Peck v. Peck*, 738 P.2d 1050, 1051–52 (Utah Ct. App. 1987) (family

---

12. Wife makes no argument on appeal that she is entitled to half of any post-separation interest or other appreciation in the account's value attributable to pre-separation contributions.

business). Wife has failed to identify a single Utah appellate decision that has expressly granted a spouse a marital share of the other spouse's post-separation contributions to his or her retirement account.

¶46    Additionally, the district court's Supplemental Memorandum Decision relies on several factors that Wife simply fails to acknowledge on appeal. One of these factors is the post-separation hostilities between the parties, including Wife's accusations of "serious misconduct" against Husband and Wife's refusal to allow visitation between Husband and the children for "lengthy periods."[13] The district court also relied on "all of the circumstances of this case as more fully explained in" the court's prior—and quite detailed—Memorandum Decision. In light of Wife's failure to analyze why these grounds are insufficient to support the district court's valuation decision, her argument falls short of demonstrating an abuse of discretion. *Cf. State v. Hurt*, 2010 UT App 33, ¶ 16, 227 P.3d 271 (declining to disturb lower court ruling when appellate briefing failed to address the grounds for the decision below); *see also* Utah R. App. P. 24(a)(9).

¶47    In sum, Wife has failed to persuade us that the district court's decision to value Husband's retirement account as of the date of the parties' separation was not adequately supported and explained by the district court. The district court gave sound reasons for its decision, and Wife has not demonstrated that the ruling represents "a clear and prejudicial abuse of discretion" by the district court. *Trubetzkoy v. Trubetzkoy*, 2009 UT App 77, ¶ 8, 205 P.3d 891 (citation and internal quotation marks omitted). Accordingly, we affirm the district court's decision to value the account as of the time of separation rather than at the date of the decree.

---

13. We note that Wife's denial of Husband's visitation rights resulted in a determination by the district court that Wife was in contempt of court.

CONCLUSION

¶48    Husband has not demonstrated any abuse of the district court's discretion in making its temporary or permanent alimony awards, nor has he persuaded us of any error as regards the district court's treatment of medical insurance premiums or travel expenses. On cross-appeal, Wife has failed to demonstrate error pertaining to the valuation of Husband's retirement accounts. For these reasons, we affirm the district court in all respects.

––––––––––

ORME, Judge (concurring):

¶49    I concur in the court's opinion, with one reservation. Wife's claimed expenses for the parties' youngest child, such as for "special foods" and "lots of therapy," are not relevant in calculating alimony; they are factors to be considered in fixing child support. *See Farnsworth v. Farnsworth*, 2012 UT App 282, ¶ 27, 288 P.3d 298 ("As a general rule, the expenses related to minor children should be included in the child support award, not as part of the alimony obligation."). That said, no prejudice resulted to Husband from this conceptual mistake. First, the district court reduced the amount it would otherwise have awarded as alimony by reason of "the rather imprecise nature of the true expenses of [Wife] particularly as they relate to [the parties' youngest child]." Second, Husband would be better off having these expenses considered in an alimony rather than a child support context, given that alimony is tax deductible, *see* 26 U.S.C.A. § 71 (West 2011), while child support is not, *see id.*, and child support does not go away until a child becomes an adult, *see Carlson v. Carlson*, 584 P.2d 864, 865 (Utah 1978), while alimony typically lasts only as long as the marriage did, *see* Utah Code Ann. § 30-3-5(8)(h) (LexisNexis Supp. 2012), and may terminate even sooner upon remarriage or other statutorily described circumstances, *see id.* § 30-3-5(a).

¶50    In addition to noting the foregoing concern, I wish to highlight an important matter of statutory interpretation that

should not escape the attention of our domestic relations practitioners. As discussed in Section II of the lead opinion, section 30-3-37(11) actually defines three categories of noncustodial parents when it comes to requiring the "relocating party" with custody to share in the cost of travel expenses necessary to facilitate visitation. *Id.* § 30-3-37(11). First, there are those noncustodial parents who are current in their support obligations. *Id.* They are presumptively entitled to reimbursement as provided in the statute. Second, there are those noncustodial parents who are not only in arrears, but who have "been found in contempt for not being current on all support obligations." *Id.* They are presumptively not entitled to reimbursement. A cursory reading of the statutory provision may suggest there are just these two categories, but as ably explained in the lead opinion, there is a third category: those noncustodial parents who are not "current on all support obligations" but who also have not "been found in contempt for not being current on *all* support obligations." *Id.* (emphasis added). With respect to this third group, the district court has broad discretion to decide what is most appropriate under all the circumstances, as it did in this case.

---